J-S65022-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| ALVAN WILSON, | |
| Appellant | No. 3586 EDA 2013 |

Appeal from the Judgment of Sentence of May 20, 2011
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0011393-2009

BEFORE:  PANELLA, OLSON and PLATT,* JJ.

MEMORANDUM BY OLSON, J.:                    **FILED NOVEMBER 13, 2014**

Appellant, Alvan Wilson, appeals from the judgment of sentence entered on May 20, 2011, as made final by the denial of an oral motion challenging the weight of the evidence, following his bench trial convictions for third-degree murder, criminal conspiracy, and possession of an instrument of crime.[1]  We affirm.

The trial court summarized the relevant factual and procedural background of this matter as follows:

> [At approximately 7:00 p.m., on Saturday, March 22, 2008], three men – [Appellant], along with co-defendant Rayvon Richburg,[2] and a third man Raphael Richburg –

---

[1] 18 Pa.C.S.A. §§ 2502(c), 903, and 907, respectively.

[2] This Court affirmed the judgment of sentence of co-defendant, Rayvon Richburg.  ***See Commonwealth v. Richburg***, 1559 EDA 2011 (filed May
*(Footnote Continued Next Page)*

*Retired Senior Judge assigned to the Superior Court.

knocked on the front door of Fatima [Dennis'] home located at [] Street.[3]  Fatima [Dennis] answered the knock and allowed Raphael Richburg to enter her home to speak with her boyfriend, James Lane.  Rayvon Richburg remained in the front doorway and [Appellant] remained near the street.  Soon, a heated argument over drugs erupted between Raphael Richburg and James Lane, in which both men discharged their firearms two times.  Each suffered a single perforating contact gunshot wound of the chest.

Although severely injured, both men were able to move and their skirmish continued onto the front porch.  As the men exited [] Street, two things happened in a matter of seconds: (1) Rayvon Richburg fired shots in James Lane's general direction while escorting Raphael Richburg[] off the front porch; and (2) [Appellant] fired shots as well.

At approximately 7:05 p.m., Philadelphia Police arrived at the scene.  Officers found James Lane lying on the front porch of [] Street with a gun next to his lifeless body.  Twenty-one packets of crack-cocaine were subsequently found on this property.  Raphael Richburg was alive, but severely wounded, in front of [] [] Street.  Paramedics rushed him to the Hospital of the University of Pennsylvania, where he was pronounced dead at 7:37 p.m.  Fifty-four packets of crack-cocaine fell from his body while at the hospital.

The medical examiner conducted autopsies on the bodies of the decedents and concluded that the manner of death for both was homicide.

Trial Court Opinion, 4/14/2014, at 2-3.

_____
(Footnote Continued) ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯

14, 2013) (unpublished memorandum), *appeal denied*, 315 EAL 2013 (Pa. 2013).

[3]  Throughout its opinion, the trial court refers to the homeowner as Ms. "Davis," while Appellant's and the Commonwealth's briefs refer to her as Ms. "Dennis."  For the purpose of our memorandum, we refer to the homeowner as Ms. Dennis.  We have also redacted the address and street name of the residence at issue.

Appellant proceeded to a non-jury trial for the events occurring on March 22, 2008. On March 4, 2011, the trial court found Appellant guilty of the aforementioned crimes. The trial court held a sentencing hearing on May 20, 2011. At sentencing, Appellant orally moved to challenge the weight of the evidence. The trial court denied relief and proceeded to sentencing, wherein it imposed an aggregate term of imprisonment of eight to 16 years. No direct appeal was taken. On February 15, 2012, Appellant filed a *pro se* petition pursuant to the Post-Conviction Relief Act (PCRA), 42 Pa.C.S.A. §§ 9542-9546. The trial court appointed counsel who filed an amended PCRA petition requesting *nunc pro tunc* relief. Following an evidentiary hearing on December 6, 2013, the trial court reinstated Appellant's appellate rights. This timely appeal resulted.[4]

Appellant presents the following issues for our review:

I. Is [Appellant] entitled to an arrest of judgment with regard to his convictions for murder of the third degree, criminal conspiracy and possessing an instrument of crime since the evidence was insufficient to sustain the verdicts as the Commonwealth failed to sustain its burden of proving [Appellant's] guilt beyond a reasonable doubt?

II. Is [Appellant] entitled to a new trial with regard to his convictions for murder of the third degree, criminal

---

[4] On December 19, 2013, Appellant filed a *nunc pro tunc* notice of appeal. The trial court issued an order directing Appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Appellant complied timely. The trial court issued an opinion pursuant to Pa.R.A.P. 1925(a) on April 14, 2014.

conspiracy and possessing an instrument of crime since the verdicts of guilt are against the weight of the evidence?

Appellant's Brief at 4.

Appellant challenges the sufficiency of the evidence, which we consider under a well-accepted standard of review:

> The standard we apply in reviewing the sufficiency of evidence is whether, viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the factfinder to find every element of the crime beyond a reasonable doubt. In applying [the above] test, we may not weigh the evidence and substitute our judgment for that of the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by a fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Muniz*, 5 A.3d 345, 348 (Pa. Super. 2010) (internal citations and quotations omitted), *appeal denied*, 19 A.3d 1050 (Pa. 2011).

Appellant's appeal argues that there was insufficient evidence to convict him of third-degree murder, criminal conspiracy, and possession of an instrument of crime. We therefore set forth the statutory elements for each of Appellant's three convictions.

- 4 -

"Third[-]degree murder occurs when a person commits a killing which is neither intentional nor committed during the perpetration of a felony, but contains the requisite malice." *Commonwealth v. Ventura*, 975 A.2d 1128, 1142 (Pa. Super. 2009) (citations omitted), *appeal denied*, *987 A.2d 161 (Pa. 2009).* Malice is an essential element of murder, including third-degree murder. *Commonwealth v. Marquez*, 980 A.2d 145, 148 (Pa. Super. 2009). Malice may be found where the actor consciously disregards an unjustified and extremely high risk that the actor's conduct might cause death or serious bodily injury. *Id.* Malice may be inferred from "the attending circumstances of the act resulting in the death." *Commonwealth v. Lee*, 626 A.2d 1238, 1241 (Pa. Super. 1993) (citations omitted). "One such circumstance is evidence that the defendant used a deadly weapon upon a vital part of the victim's body; this inference alone is sufficient to establish malice." *Id.*

Appellant was also convicted of criminal conspiracy to commit murder, 18 Pa.C.S.A. § 903(a)(1) (codifying the offense of criminal conspiracy). Pursuant to that statute:

> A person is guilty of conspiracy with another person or persons to commit a crime if with the intent of promoting or facilitating its commission he:
>
> > (1) agrees with such other person or persons that they or one or more of them will engage in conduct which constitutes such crime or an attempt or solicitation to commit such crime.

*Id.* In addition, subsection (e) of the conspiracy statute provides that "[n]o person may be convicted of conspiracy to commit a crime unless an overt act in pursuit of such conspiracy is alleged and proved to have been done by him or by a person with whom he conspired." 18 Pa.C.S.A. § 903(e).

Further:

Circumstantial evidence may provide proof of the conspiracy. The conduct of the parties and the circumstances surrounding such conduct may create a "web of evidence" linking the accused to the alleged conspiracy beyond a reasonable doubt. Additionally:

An agreement can be inferred from a variety of circumstances including, but not limited to, the relation between the parties, knowledge of and participation in the crime, and the circumstances and conduct of the parties surrounding the criminal episode. These factors may coalesce to establish a conspiratorial agreement beyond a reasonable doubt where one factor alone might fail.

*Commonwealth v. Jones*, 874 A.2d 108, 121-122 (Pa. Super. 2005), *quoting* *Commonwealth v. Greene*, 702 A.2d 547, 554 (Pa. Super. 1997) (internal citations omitted).

Finally, Appellant was convicted of possession of an instrument of crime. Pursuant to 18 Pa.C.S.A. § 907(b), "[a] person commits a misdemeanor of the first degree if he possesses a firearm or other weapon concealed upon his person with intent to employ it criminally." Based upon that language, to sufficiently establish the crime, the Commonwealth must present evidence that, *inter alia*, the defendant possessed the firearm or other weapon, with an intent to use the tools for some criminal purpose. *Commonwealth v. Hardick*, 380 A.2d 1235, 1236 (Pa. 1977).

- 6 -

Based upon review of the certified record, the parties' submissions, and the trial court's opinion, we find that the trial court has thoroughly and accurately set forth why the evidence in this matter was sufficient to convict Appellant of the aforementioned crimes. *See* Trial Court Opinion, 1/5/2012, at 3-8. Consequently, we affirm on the basis of the trial court opinion and adopt it as our own.

Appellant, however, challenges the trial court opinion, arguing that the evidence was insufficient to convict him of any of the charged crimes because, according to Appellant, within its assessment of the sufficiency of the evidence, the trial court improperly relied upon inadmissible evidence. Appellant's Brief at 13-31. Appellant argues that the trial court improperly admitted eyewitness statements from two witnesses who, after providing their statements, recanted and/or gave conflicting testimony. *Id.* at 14-16, 22-23. Appellant argues that the "Commonwealth's evidence in this regard was speculative, conjectural and inherently inconsistent, contradictory and unreliable and did not sustain the Commonwealth's burden beyond a reasonable doubt." *Id.* at 22. Absent the eyewitness statement, Appellant argues that there was no corroborating physical evidence tying him to the crimes. *Id.* at 22-25. Consequently, Appellant argues that his judgment of sentence should be reversed, because the Commonwealth failed to prove his identity as the perpetrator of the crimes alleged. *Id.* at 25-27. Finally, Appellant contends that there was no evidence presented at trial that he was

engaged in a conspiratorial relationship or acted as an accomplice with his co-defendants. *Id.* at 29-31.

Appellant's argument, however, is flawed for multiple reasons. Most fundamentally, pursuant to Pennsylvania precedent, when considering the sufficiency of the evidence, a reviewing court is "required to consider all evidence that was actually received, without consideration as to the admissibility of that evidence." *Commonwealth v. Palmer*, 751 A.2d 223, 227 (Pa. Super. 2000); *Commonwealth v. Reed*, 990 A.2d 1158, 1161 (Pa. 2010) (holding that "the entire trial record should be evaluated and all evidence received considered, whether or not the trial court's rulings thereon were correct.") Therefore, even if the eyewitness statements were improperly admitted at trial, the trial court was obligated to consider them for sufficiency review purposes. We also note that witness statements to police that are later recanted may supply a sufficient evidentiary basis to establish guilt beyond a reasonable doubt. Subsequent recantation does not defeat the factfinder's right to credit prior statements or testimony in considering a defendant's guilt or innocence. *See Commonwealth v. Hanible*, 30 A.3d 426, 443 (Pa. 2011) ("[T]he mere fact that [a witness] recanted a statement he had previously made to the police certainly does not render the evidence insufficient to support [Hanible's] conviction. Rather, the jury was free to evaluate both [the witness'] statement to police as well as his testimony at trial recanting that statement, and free to believe

all, part, or none of the evidence."). Thus, there was no error in the trial court relying on prior statements that were subsequently recanted at trial.

Additionally, Appellant's contention that the eyewitness statements should not have been relied upon because Appellant believes that they were untrustworthy and unreliable challenges the weight of the evidence, not its sufficiency. *See e.g. Commonwealth v. Murray*, 597 A.2d 111 (Pa. Super. 1991) (distinguishing challenges to the sufficiency of the evidence from challenges to the weight of the evidence).

Finally, we note that the arguments presented in Appellant's brief ultimately focus on and challenge the admission of evidence, not its sufficiency. Within his brief, Appellant does not identify which elements of his respective crimes were insufficiently proven; instead, he directs his entire argument to the admission of the eyewitness statements. If Appellant wanted to appeal the admission of the eyewitness statements, he was obligated to challenge their admission through an objection at trial and then follow-up with a subsequent appeal. Review of the certified record, however, reveals that the eyewitness statements were admitted based upon a stipulation from counsel, and Appellant's trial counsel did not lodge a contemporaneous objection preserving his right to appeal their admission. Appellant's effort to recast his claim as a challenge to the sufficiency of the evidence is unavailing. Thus, Appellant's first issue lacks merit.

Next, Appellant challenges the weight of the evidence to support his convictions. Pursuant to Pennsylvania Rule of Criminal Procedure 607:

> A claim that the verdict was against the weight of the evidence shall be raised with the trial judge in a motion for a new trial:
>
> > (1) orally, on the record, at any time before sentencing;
> >
> > (2) by written motion at any time before sentencing; or
> >
> > (3) in a post-sentence motion.

*See* Pa.R.Crim.P. 607. At the sentencing hearing, Appellant made an oral motion challenging the weight of the evidence. Thus, he properly preserved his current claim.

Our Supreme Court has determined:

> A motion for a new trial alleging that the verdict was against the weight of the evidence is addressed to the discretion of the trial court. An appellate court, therefore, reviews the exercise of discretion, not the underlying question whether the verdict is against the weight of the evidence. The factfinder is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses. The trial court will award a new trial only when the jury's verdict is so contrary to the evidence as to shock one's sense of justice. In determining whether this standard has been met, appellate review is limited to whether the trial judge's discretion was properly exercised, and relief will only be granted where the facts and inferences of record disclose a palpable abuse of discretion. Thus, the trial court's denial of a motion for a new trial based on a weight of the evidence claim is the least assailable of its rulings.

*Commonwealth v. Weathers*, 95 A.3d 908, 910-911 (Pa. Super. 2014), citing *Commonwealth v. Diggs*, 949 A.2d 873, 879–880 (Pa. 2008).

- 10 -

In this case, the trial court concluded that it "heard credible testimony that, *inter alia*, [Appellant] and his co-defendant went armed to the location where the incident occurred and then, when gunfire rang out, both men simultaneously pulled out weapons and began firing." Trial Court Opinion, 4/14/2014, at 9. As a result, two men were killed. Hence, Appellant, while engaged in a conspiracy, used an instrument of crime that resulted in death. Accordingly, we conclude that Appellant's bench trial convictions for third-degree murder, criminal conspiracy, and possession of an instrument of crime does not shock one's sense of justice. As such, Appellant's second issue is without merit.

Based upon the reasons set forth in the trial court's April 14, 2014 opinion, the evidence was more than sufficient, and not against its weight, to convict Appellant of the aforementioned crimes. We therefore affirm Appellant's judgment of sentence on the basis of the trial court opinion. The parties are instructed to attach a copy of the trial court's April 14, 2014 opinion to all future filings regarding this appeal. Prior to attaching that opinion, however, we instruct the parties to redact any reference to the street name and number where the incident in this matter took place.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/13/2014

IN THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY
FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
CRIMINAL TRIAL DIVISION

COMMONWEALTH OF PENNSYLVANIA　　　:　　COURT OF COMMON PLEAS
　　　　　　　　　　　　　　　　　　　　　　　　:　　OF PHILADELPHIA
　　　　　　　　　　　　　　　　　　　　　　　　:
　　　　　VS.　　　　**FILED**　　:　　CRIMINAL TRIAL DIVISION
　　　　　　　　　　　　　　　　　　　　　　　　:
ALVAN WILSON　　　APR 1 4 2014　:　　CR-51-CP-0011393-2009

Criminal Appeals Unit
First Judicial District of PA

OPINION

PROCEDURAL HISTORY

Defendant, Alvan Wilson, together with Rayvon Richburg, was tried by this Court, sitting without a jury, on charges of murder, generally, criminal conspiracy, and possession of an instrument of crime.[1] On March 4, 2011, this Court found both defendants guilty of third-degree murder, criminal conspiracy, and possession of an instrument of a crime.

On May 20, 2011, after this Court denied both defendants' motions of extraordinary relief, it sentenced both defendants to concurrent sentences of 8 to 16 years on both the third-degree murder and criminal conspiracy charges. In addition, concurrent sentences of 2 ½ to 5 years were imposed on both defendants on their respective weapons charges.[2]

Following the imposition of sentence, no appeal was filed either by defendant or on his behalf. He subsequently filed a timely petition pursuant to the Post-Conviction Relief Act, 42 Pa.C.S. §9541 et. seq, that culminated in the issuance of an order permitting defendant to file a

---

[1] Alvan Wilson is also known as "Moony."
[2] Rayvon Richburg unsuccessfully appealed to the Superior Court, which on May 14, 2013, affirmed the judgment of sentence. Commonwealth v. Richburg, 1559 EDA 2011. In its memorandum, the Superior Court directed that the address of the residence where the incident occurred not be referred to.

1

notice of appeal *nunc pro tunc*. Subsequent thereto, defendant filed a timely notice of appeal as well as a requested Pa.R.A.P. 1925(b) statement.

FACTUAL HISTORY

At approximately 7:00 p.m., on Saturday, March 22, 2008, an argument between two known drug-dealers – James Lane[3] and Raphael Richburg[4] – escalated into a shootout in the block of _____ in Philadelphia resulting in the death of both men. On this night, three men – defendant Alvan Wilson, along with co-defendant Rayvon Richburg, and a third man named Raphael Richburg – knocked on the front door of Fatima Davis' home located at _____ Fatima Davis answered the knock and allowed Raphael Richburg to enter her home to speak with her boyfriend, James Lane. Rayvon Richburg remained in the front doorway and Alvan Wilson remained near the street. Soon, a heated argument over drugs erupted between Raphael Richburg and James Lane, in which both men discharged their firearms two times. Each suffered a single perforating contact gunshot wound of the chest.

Although severely injured, both men were able to move and their skirmish continued onto the front porch. As the men exited _____ two things happened in a matter of seconds: (1) Rayvon Richburg fired shots in James Lane's general direction while escorting Raphael Richburg's off the front porch; and (2) Alvan Wilson fired shots as well.

At approximately 7:05 p.m., Philadelphia Police arrived at the scene. Officers found James Lane lying on the front porch of _____ with a gun next to his lifeless body. Twenty-one packets of crack-cocaine were subsequently found on this property. Raphael Richburg was alive, but severely wounded. Paramedics rushed him to the Hospital of the

---

[3] James Lane was also known as Robert Moore, "Buff," and "B."
[4] Raphael Richburg was also known as Ray-Ray. He was the half-brother of Defendant Rayvon Richburg.

University of Pennsylvania, where he was pronounced dead at 7:37 p.m. Fifty-four packets of crack-cocaine fell from his body while at the hospital.

The medical examiner conducted autopsies on the bodies of the decedents and concluded that the manner of death for both was homicide.

## DISCUSSION

Defendant Richburg was convicted of third-degree murder, conspiracy, and possession of an instrument of a crime. In his 1925(b) statement, defendant asserts that because of conflicting witness testimony, lack of proof of identity and intent to kill or cause serious bodily injury, and speculative, inconsistent, contradictory, and unreliable evidence, the evidence was insufficient to find him guilty of each of the charges he was convicted of committing.

When reviewing the sufficiency of the evidence, the reviewing Court must evaluate all evidence admitted at trial in a light most favorable to the Commonwealth as verdict winner, giving the Commonwealth the benefit of all reasonable inferences to be drawn from the evidence. Commonwealth v. Hall, 830 A.2d 537, 541-42 (Pa. 2003); Commonwealth v. Boczkowski, 846 A.2d 75, 80 (Pa. 2004). The finder of fact may believe all, part, or none of the evidence regarding the question of whether reasonable doubt existed, and the facts and circumstances need not be incompatible with the defendant's innocence. Commonwealth v. Derr, 841 A.2d. 558, 559 (Pa. Super. 2004). In addition to granting a new trial because the Commonwealth failed to prove each element of the crime charged beyond a reasonable doubt, an appellate court may also award a new trial if the evidence was so unreliable and contradictory that it would be incapable of supporting a guilty verdict. Commonwealth v. Karkaria, 625 A.2d 1167, 1167 (Pa. 1993).

3

Third-degree murder encompasses all forms of murder that do not constitute first-degree murder (intentional killing) or second-degree murder (felony murder). 18 Pa.C.S.A. § 2502(c). In the context of third-degree murder, the Commonwealth must demonstrate that defendant acted with malice. Commonwealth v. Marquez, 980 A.2d 145, 148 (Pa. Super. 2009); Commonwealth v. Johnson, 719 A.2d 778, 785 (Pa. Super 1998); Commonwealth v. Melechio, 658 A.2d 1385, 1388 (Pa. Super. 1995). Malice exists where there is a particular ill will, and also where "there is a wickedness of disposition, hardness of heart, wanton conduct, cruelty, recklessness of consequences, or a mind lacking regard for social duty." Johnson, 719 A.2d at 785; Melechio, 658 A.2d at 1388. The fact-finder may infer malice from the circumstances surrounding a defendant's actions and from the use of a deadly weapon on a vital part of the victim's body Johnson, 719 A.2d 778, 785 (citing Commonwealth v. Cruz-Centeno, 668 A.2d 536, 540 (Pa. Super. 1995)).

Criminal conspiracy requires the Commonwealth to prove that the defendant (1) entered an agreement to commit or aid in an unlawful act with another person (2) with a shared criminal intent and, (3) an overt act was done in furtherance of the conspiracy. 18 Pa. C.S.A. § 903. A conspiracy is almost always proved through circumstantial evidence. Commonwealth v. Swerdlow, 636 A.2d 1173, 1176 (Pa. Super. 1994). Factors such as an association between the alleged conspirators, knowledge of the commission of the crime, presence at the scene of the crime, and participation in the object of the conspiracy should be considered in the context of the crime to establish proof of a conspiracy. Id. at 1777.

The basic principle of conspirator liability is that once a conspiracy has been shown, each conspirator is liable for acts of co-coconspirators in furtherance of the conspiracy. Commonwealth v. Stocker, 622 A.2d 333, 343-44 (Pa. Super. 1993). In the context of murder,

4

for example, even if an individual co-conspirator did not contemplate murder, where such a killing is a natural and probable consequence of a co-conspirator's conduct, murder is not beyond the scope of the conspiracy. Commonwealth v. La, 640 A.2d 1336 (Pa. Super. 1994). appeal denied, 655 A.2d 986 (Pa. 1994).

Regarding possession of an instrument of crime, the Commonwealth must establish that the defendant possessed an instrument of crime, i.e. anything commonly used for criminal purposes, with the intent to employ it criminally. See 18 Pa. C.S.A. § 907. A defendant's use of a loaded gun on his victim is more than sufficient to establish his guilt of possession of an instrument of crime. Commonwealth v. Santiago, 980 A.2d 659, 662 (Pa. Super. 2009) (citing Commonwealth v. McNair, 603 A.2d 1014, 1017 (Pa. 1992)). Wholly circumstantial evidence is sufficient to support a conviction of possession of an instrument of crime. Santiago, 980 A.2d at 662-63.

The Commonwealth presented sufficient evidence to prove each element of the crimes charged beyond a reasonable doubt. The record shows that eyewitness accounts of the incident were corroborated by direct and circumstantial evidence, especially the ballistic evidence, which evidence established that defendant Wilson was guilty beyond a reasonable doubt of the aforementioned charges.[5] It is undisputed that on March 22, 2008, James Lane, the decedent herein, was at a residence in the ___ block of ___ in Philadelphia. At approximately 7:00 p.m., defendant Alvan Wilson went to this location with Raphael Richburg and Rayvon

---

[5] Fatima Davis and Keith Holmes both gave police statements. Holmes told police that he saw defendant firing a weapon. In addition, Holmes testified at defendant's preliminary hearing during which he testified that what was contained in his statement was true and correct. When both witnesses disavowed the correctness of their prior accounts the Commonwealth introduced them as substantive evidence pursuant to Commonwealth v. Brady, 507 A.2d 66, 77 (Pa. 1986), and Commonwealth v. Lively, 610 A.2d 7, 9-11 (Pa. 1992).

5

Richburg. (N.T. 3/3/11, pp. 110-11). The ballistics evidence– which is the key needed to unlock this puzzling case – proves all four men were armed and fired their weapons.

According to Fatima Davis the initial interaction between James Lane and Raphael Richburg involved drugs. (N.T. 3/3/11, pp. 142-46). While this Court was not informed of the exact words exchanged, evidence suggests that they were rival drug dealers, that the situation quickly escalated, and the two men shot one another. Ballistics evidence confirms that Philadelphia Police recovered one .40 caliber fired cartridge casing and two .45 caliber fired cartridge casings from inside the residence at              .. (N.T. 3/3/11, pp. 21-23). Medical evidence demonstrates that both James Lane and Raphael Richburg *suffered perforating contact gunshot wounds to the chest* and that these injuries would not have immediately incapacitated either man. (N.T. 3/3/11, p. 90).

Other evidence then shows that the dispute continued outside the residence where defendant Wilson and Rayvon Richburg joined in the affray. It consists of James Lane's lifeless body being found in the doorway of              , and traces of Raphael Richburg's blood trailing from                 to                 , as well as the contents of Holmes' police statement and prior testimony implicating defendant in the crime. Ballistic evidence established that two weapons in addition to the ones fired by Lane and Raphael Richburg were fired outside the residence that day. Police recovered four .9 millimeter fired cartridge casings on the front porch of                 and three bullets from the head of the decedent Lane. In his expert opinion, the ballistician testified that the four .9 millimeter fired cartridge casings were fired in a different gun than the one that fired the bullets that struck Lane's head. (N.T. 3/3/11, pp. 70-73). As such, this Court reasonably inferred from this evidence that defendant fired his weapon during the incident and was clearly involved in it.

6

When viewing defendant Wilson's actions in conjunction with the actions of Raphael Richburg and co-defendant Rayvon Richburg, in a light most favorable to the Commonwealth, it was reasonable for this Court to conclude that a conspiracy existed. It was not a coincidence that these three men were simultaneously present at the scene at 7:00 p.m. on March 22, 2008. Instead, it is clear form their actions and the ensuing shootout that they each agreed to go to there, equipped with firearms, to cause physical harm to James Lane. Due to the presence of lethal weapons, murder was a foreseeable consequence, and in reality, murder did occur.

James Lane's death resulted from one gunshot wound to the chest from Raphael Richburg and three gunshot wounds in the head. Thus, it is undeniable that a deadly weapon was used on a vital part of his body. Not only does such an action allow this Court to determine that an instrument of a crime was used, it allows this Court to reasonably infer the malice necessary to support the finding of third-degree murder as well as a concert of action sufficient to find that a conspiracy existed. Because each conspirator is criminally responsible for the consequences of his co-conspirator actions, defendant Richburg is culpable for the third-degree murder of James Lane.

In addition, unlike in Karkaria, supra, where the testimony was incapable of supporting a guilty verdict, there was sufficient reliable and believable evidence presented to prove that defendant was involved in a scheme the object of which was to shoot Lane and that he fired a gun during the incident. See Karkaria, 625 A.2d at 1167. A third-degree murder conviction for defendant is sustained through criminal conspiracy described above. Defendant, along with Rayvon Richburg and Raphael Richberg, armed himself with deadly weapons to confront Lane. Although various witnesses denied having seen the incident, their prior statements and testimony coupled with the ballistic evidence was sufficiently clear to enable this Court, sitting as fact-

7

finder, to conclude that the evidence was not so inconsistent so as to preclude finding defendant guilty. The accuracy of the testimony is up to the fact-finder to determine and here the testimony is not so unreliable or contradictory such that an award of a new trial is warranted. Therefore, the evidence was more than sufficient to support defendant's convictions and this claim should be denied.

In his second and final claim, defendant contends that the verdict finding him was against the weight of the evidence for the same reasons he asserts that the evidence was insufficient to sustain the convictions.[6] A claim that the verdict is against the weight of the evidence asserts that the verdict shocks one's sense of justice. Commonwealth v. Vandivner, 599 Pa. 617, 962 A.2d 1170, 1177 (Pa. 2009). "A motion for a new trial on the grounds that the verdict is contrary to the weight of the evidence concedes that there is sufficient evidence to sustain the verdict; thus the trial court is under no obligation to view the evidence in the light most favorable to the verdict winner." Commonwealth v. Widmer, 744 A.2d 745, 751 (Pa. 2000) (citation omitted). "An allegation that the verdict is against the weight of the evidence is addressed to the discretion of the trial court." Id. at 751-752. Finally, it is exclusively for the finder of fact to determine the credibility of witnesses, and he may believe all, part, or none of the evidence presented. Commonwealth v. Dreibelbis, 493 Pa. 466, 469, 426 A.2d 1111, 1113 (1981).

A careful review of the evidence herein leads easily to the conclusion that this Court did not commit an abuse of discretion by denying defendant's oral motion for extraordinary relief predicated upon a challenge to the weight of the evidence. As noted during the discussion above

---

[6] Although defendant did not file a post-sentence motion raising a weight of the evidence claim, which usually results in the waiver of such a claim, defendant unsuccessfully presented an oral motion for extraordinary relief that argued that the verdicts were against the weight of the evidence prior to the imposition of sentence and thereby preserved his weight claim for appellate review. See Pa.R.Crim.P. 607(A).

of defendant's sufficiency issue, this Court heard credible testimony that, *inter alia*, defendant and his co-defendant went armed together to the location where the incident occurred and then, when gunfire rang out, both men simultaneously pulled out weapons and began firing them. Given these circumstances, it cannot be said that an abuse of discretion occurred in denying defendant's weight claim and accordingly, it is suggested that this claim be denied for lack of merit.

## CONCLUSION

Based on the foregoing, the judgments of sentence should be affirmed.

By the Court,

DATE: 4/9/14

Honorable Jeffrey P. Minehan

9