J-S11023-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| DARNELL J. WILLIAMS | |
| Appellant | No. 1106 MDA 2014 |

Appeal from the Judgment of Sentence February 27, 2014
In the Court of Common Pleas of Dauphin County
Criminal Division at No(s): CP-22-CR-0003969-2011

BEFORE:  PANELLA, J., OTT, J., and MUSMANNO, J.

MEMORANDUM BY OTT, J.:                    **FILED JUNE 08, 2015**

Darnell J. Williams appeals from the judgment of sentence imposed on February 27, 2014, in the Court of Common Pleas of Dauphin County, made final by the denial of post-sentence motions on June 2, 2014.  On December 13, 2013, a jury convicted Williams of third-degree murder and persons not to possess firearms.[1]  The court sentenced Williams to an aggregate term of 22 to 44 years' imprisonment.  On appeal, Williams raises the following three issues:  (1) whether there was sufficient evidence to convict him of third-degree murder; (2) whether the verdict was against the weight of the evidence; and (3) whether the court abused its discretion with respect to his

---

[1]  18 Pa.C.S. §§ 2502(c) and 6106(a)(1), respectively.

sentencing. After a thorough review of the submissions by the parties, the certified record, and relevant law, we affirm the judgment of sentence.

The trial court set forth the facts as follows:

On the evening of June 14, 2011, Thorrin Burgess ("Burgess") was shot in the abdomen on a basketball court at Reservoir Park in Harrisburg, and shortly thereafter died as a result. The evidence at trial established that on the day of the homicide, Burgess, his brother Darrien Burgess, and several of their friends, including Michael Warren and Brandon Wright, were playing basketball at Reservoir Park. At some point, Darrien and an individual nicknamed Jersey began to fight. When Darrien began to get the better of Jersey, Williams struck Darrien with a handgun. Burgess intervened and pleaded with Williams before ultimately tussling with him. During the tussle they both went to the ground and Williams shot Burgess.

The Commonwealth also presented physical evidence that connected Williams to the killing. Angela Difiore, a forensic DNA scientist with the Pennsylvania State Police, testified that she examined fingernail clipping taken from Burgess and was able to obtain a DNA sample. She compared that sample to a known DNA sample taken from Williams, and concluded that Williams' DNA was present.

Trial Court Opinion, 6/2/2014, at 1-2 (record citations omitted).

A jury trial began on December 10, 2013. Three days later, on December 13th, the jury convicted Williams of third-degree murder and persons not to possess firearms. On February 27, 2014, the court sentenced Williams to a term of 19 to 38 years' incarceration for the murder conviction, and a consecutive term of three to six years' imprisonment for the firearms

offense. Williams filed post-sentence motions, which were denied on June 2, 2014. This appeal followed.[2]

In his first issue, Williams challenges the sufficiency the evidence with regard to his third-degree murder conviction.[3] Williams's Brief at 23. First, he alleges the Commonwealth failed to prove his actions constituted third-degree murder because the evidence did not "establish that [he] created a substantial and unjustifiable risk of death or serious bodily injury" or that he intended to shoot anyone with a gun. *Id.* at 24-25. He states:

> [He] only attempted to strike Darrien after Darrien, who was much larger than Jersey, pulled Jersey's shirt over Jersey's head and then began to beat Jersey handedly. There was no evidence to demonstrate that [Williams] used the firearm he allegedly possessed in any manner other than as a blunt object to level the proverbial playing field after Darrien began to fight unfairly.

*Id.* at 24-25. Second, Williams contends assuming *arguendo* he shot the victim, the Commonwealth failed to disprove that he acted in self-defense. *Id.* at 25. Williams states the victim was taller, weighed more, and significantly overpowered him when, without provocation, the victim picked him up twice and slammed him to the ground. *Id.* at 26. Williams argues, "Given the size differential between [himself] and the victim, [he] was

---

[2] The court did not order Williams to file a concise statement of errors complained of on appeal under Pa.R.A.P. 1925(b). On August 29, 2014, the trial court issued an opinion under Pa.R.A.P. 1925(a), adopting its June 2, 2014, memorandum opinion.

[3] Williams does not challenge his firearms conviction.

justified in using lethal force against the victim since [he] reasonably believed that such force was necessary to protect himself against serious bodily injury or death." ***Id.*** at 27.

Our standard of review is well-settled:

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the [finder] of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

***Commonwealth v. Brooks***, 7 A.3d 852, 857 (Pa. Super. 2010) (citation omitted), *appeal denied*, 21 A.3d 1189 (Pa. 2011).

> "[T]hird[-]degree murder occurs when a person commits a killing which is neither intentional nor committed during the perpetration of a felony, but contains the requisite malice." ***Commonwealth v. Truong***, 2012 PA Super 8, 36 A.3d 592, 597 (Pa. Super. 2012) (*en banc*) (citation omitted), *appeal denied*, 618 Pa. 688, 57 A.3d 70 (Pa. 2012).
>
> > Malice is defined as: wickedness of disposition, hardness of heart, cruelty, recklessness of consequences, and a mind regardless of social duty, although a particular person may not be intended to be injured[.] Malice may be found

where the defendant consciously disregarded an unjustified and extremely high risk that his actions might cause serious bodily injury. Malice may be inferred by considering the totality of the circumstances.

*Commonwealth v. Dunphy*, 2011 PA Super 100, 20 A.3d 1215, 1219 (Pa. Super. 2011); *accord* **Truong**, *supra* at 597-598.

*Commonwealth v. Thompson*, 106 A.3d 742, 757 (Pa. Super. 2014).

"Malice may be inferred from the attending circumstances of the act resulting in the death. One such circumstance is evidence that the defendant used a deadly weapon upon a vital part of the victim's body; this inference alone is sufficient to establish malice." *Commonwealth v. Lee*, 626 A.2d 1238, 1241 (Pa. Super. 1993) (quotation and quotation marks omitted).

With respect to the defense of self-defense, we are guided by the following:

Section 505 sets forth the elements of self-defense:

§ 505. Use of force in self-protection

(a) Use of force justifiable for protection of the person.-- The use of force upon or toward another person is justifiable when the actor believes that such force is immediately necessary for the purpose of protecting himself against the use of unlawful force by such other person on the present occasion.

18 Pa.C.S.A. § 505(a).

"When a defendant raises the issue of self-defense, the Commonwealth bears the burden to disprove such a defense beyond a reasonable doubt." *Commonwealth v. Bullock*, 2008 PA Super 83, 948 A.2d 818, 824 (Pa. Super. 2008). The

> Commonwealth sustains this burden if it establishes at least one of the following: (1) the accused did not reasonably believe that he was in danger of death or serious bodily injury; (2) the accused provoked or continued the use of force; or (3) the accused had a duty to retreat and the retreat was possible with complete safety. **Commonwealth v. McClendon**, 2005 PA Super 164, 874 A.2d 1223, 1230 (Pa. Super. 2005). The Commonwealth need only prove one of these elements beyond a reasonable doubt to sufficiently disprove a self-defense claim. **Commonwealth v. Burns**, 2000 PA Super 397, 765 A.2d 1144, 1149 (Pa. Super. 2000).

**Commonwealth v. Ventura**, 975 A.2d 1128, 1143 (Pa. Super. 2009), *appeal denied*, 987 A.2d 161 (Pa. 2009).

In light of this case law, we disagree with Williams, and find the Commonwealth presented sufficient circumstantial evidence to support his conviction. The record reflects the following: On the night of June 14, 2011, the victim, Burgess, went to Reservoir Park to play basketball with several friends, including his brother, Darrien Burgess. While there, Darrien Burgess engaged in a physical altercation with another male, named "Jersey," over a female. Tarajai Mills, a witness, testified he was at the basketball court at the time of the incident. N.T., 12/10/2013-12/11/2013, at 125. Mills stated Darrien was getting the better of Jersey when another male individual shot past Mills and headed toward the fight with a gun in his hand raised. *Id.* at 138. Mills indicated the male tried to strike Darrien but missed because Darrien moved out of the way. *Id.* The victim then entered the fray to, apparently, break up the dispute because he did not want a gun involved. *Id.* The victim and the male then "g[o]t tangled up," and went

- 6 -

"to the ground." ***Id.*** Mills stated, "As they're going to the ground, I seen the gun fall down, because I noticed when he came past, the gun was, like, silver. It hit the ground. Somebody picked it up. At that point shot goes off and [the victim]'s hit." ***Id.*** Mills testified he never saw the face of the male with the gun. Id. at 139. He also noted the victim grabbed the perpetrator to try to "talk to him, plead with him to … stop." ***Id.*** at 143. It did not appear to Mills that the victim "was trying to fight or escalate things" with the perpetrator. ***Id.*** at 145.

Michael Warren testified he was the victim's best friend and was also at the basketball court. Warren stated Darrien and Jersey were engaged in a physical altercation when a person named "Nooters" tried to "jump in" but "he got pushed away." ***Id.*** at 198. He then saw another individual, subsequently identified as Williams, come into the fight and try to reach for Darrien, but the victim grabbed him. ***Id.*** at 201, 209. Warren testified he ran because he saw Williams had a gun and that the defendant tried to pull it out. ***Id.*** at 202. Warren then heard a shot, turned around, and saw his best friend lying on the ground. ***Id.*** at 204.

Brandon Wright testified he is a cousin of the Burgess brothers. He stated that while the group was waiting for Darrien to arrive to fight Jersey, he heard Nooters call someone and say, "Com[e] up here, DJ; come up here with the john[.]" ***Id.*** at 261. Wright indicated that shortly thereafter, Williams arrived at the basketball court with a shiny, silver revolver. ***Id.*** at

- 7 -

262-263. He then heard the victim say that they did not need a gun. *Id.* at 263. Wright testified that as Darrien was beating Jersey, Williams tried to hit Darrien with the gun but missed. *Id.* at 264. Wright then observed the victim come in, pick Williams up, and "slam" him to the ground. *Id.* The victim picked Williams up again and the two start wrestling or tussling. *Id.* When the victim began to slam Williams to the ground again, Wright stated he heard a gunshot and saw "smoke" coming from the victim's stomach. *Id.*

Darrien also testified at the trial. He stated that on the evening in question, the victim had informed him that a "brother" wanted to fight him. N.T., 12/12/2013, at 51. When he came to the court, he noticed the victim and Nooters exchange words and then he saw Jersey walk up. Darrien stated the fight began and he was "beating [Jersey's] ass" when he "got hit in the head." *Id.* at 54-55.[4] Darrien then noticed his brother beating up the other individual, who was identified as Williams. *Id.* at 56-57. He averred they were "tie[d] up" when the gun went off and the victim fell to the ground. *Id.* at 59. Darrien testified he saw Williams's right hand with the gun pointed at the victim's stomach and then the gun fired. *Id.* at 60. He then saw Jersey and Williams flee the scene. *Id.*

Additionally, the trial testimony revealed the victim was over six foot tall and weighed around 200 pounds, while Williams was approximately five

---

[4] He was subsequently told it was a gun that hit him. N.T., 12/12/2013, at 55.

foot, seven inches tall and about 140 pounds. N.T., 12/10/2013-12/11/2013, at 39, 169. Further, medical examiner, Wayne Ross, M.D., testified the victim died of a "contact" gunshot wound to the left side of the abdomen and the chest.[5] *Id.* at 39, 51. The doctor stated the gun "was pressed against the clothing [by the abdomen] when the shot [was] fired" and the "fact that this is pressed in there and the trigger is pulled supports a fact it's an intentional pulling of the trigger." *Id.* at 48, 83. Lastly, Angela DiFiore, a forensic DNA scientist with the Pennsylvania State Police, testified she took DNA samples from the victim's fingernails and from Williams. N.T., 12/12/2013, at 15. The victim's left-hand finger nail clippings indicated DNA from Williams was present. *Id.* at 19.

Viewing the evidence in the light most favorable to the Commonwealth, as the verdict winner, and drawing all reasonable inferences therefrom, we conclude, as did the trial court, that there was sufficient evidence to support Williams's murder conviction.[6] First, not only did the witnesses' testimony place Williams at the scene, but the fact that Williams's DNA was found under the victim's fingernails implies he was engaged in an

---

[5] Dr. Ross also stated there were indications the victim had been pistol-whipped on the right side of his forehead, right side of his face, and both shoulders. N.T., 12/10/2013-12/11/2013, at 40.

[6] We note the trial court analyzed the sufficiency of the evidence under the umbrella of Williams's weight claims. *See* Trial Court Opinion, 6/2/2014, at 5-7.

altercation with the victim. Moreover, the jury, sitting as the fact-finder, could reasonably infer that Williams consciously disregarded an unjustified and extremely high risk that his actions might cause death when he brought a gun to the fight, pressed it against the victim's body while engaged in a tussle, and then pulled the trigger. *Thompson*, 106 A.3d at 757. Further, Williams used the deadly weapon upon a vital part of the victim's body, his stomach region; "this inference alone is sufficient to establish malice." *Lee*, 626 A.2d at 1241.

To the extent that Williams attempts to justify his actions, asserting that he used the gun in self-defense to "level the playing field" because the victim was bigger than he was, we disagree. The facts are clear that the initial fight was between Darrien and Jersey. Williams then escalated the conflict, when he involved himself in the fracas between the other two men and introduced a gun into the situation. He also hit Darrien with the gun. As such, one can reasonably infer he then became the aggressor. Furthermore, none of the Commonwealth eyewitnesses testified that the victim was holding a weapon. Moreover, based on their testimony, it appeared the victim was trying to diffuse the situation by stating that guns were not necessary. Even though the victim was bigger than Williams and the two men were engaged in a physical altercation, he did not prove that the use of deadly force was justified since at the time he pulled the trigger, he was not in imminent danger of death or serious bodily harm. *Ventura*,

975 A.2d at 1143. Therefore, we conclude the Commonwealth presented sufficient circumstantial evidence to support Williams's murder conviction.

Next, Williams claims that the verdict was against the weight of the evidence because the Commonwealth failed to prove that he shot the victim.[7] Williams's Brief at 29. To this extent, he contends the only disinterested witness at trial, Mills, testified that he had a clear view of the basketball court but was unable to identify Williams as the individual who shot the victim. *Id.* at 30. Moreover, he asserts that although multiple friends of the victim implicated Williams as the shooter, their testimony was biased based on their relationship with the victim, as well as unreliable and inconsistent. *Id.*

> Appellate review of a weight of the evidence claim is well-established:
>
> A weight of the evidence claim concedes that the evidence is sufficient to sustain the verdict, but seeks a new trial on the ground that the evidence was so one-sided or so weighted in favor of acquittal that a guilty verdict shocks one's sense of justice. *Commonwealth v. Widmer*, 560 Pa. 308, 318–20, 744 A.2d 745, 751–52 (2000); *Commonwealth v. Champney*, 574 Pa. 435, 443–44, 832 A.2d 403, 408–09 (2003). On review, an appellate court does not substitute its judgment for the finder of fact and consider the underlying question of whether the verdict is against the weight of the evidence, but, rather, determines only whether the trial court abused its discretion in making its determination. *Widmer*, 560 Pa. at 321–22, 744 A.2d at 753; *Champney*, 574 Pa. at 444, 832 A.2d at 408.

---

[7] Williams properly preserved his challenge to the weight of the evidence by raising it in a post-sentence motion, which was filed on March 10, 2014. *See* Pa.R.Crim.P. 607(A).

*Commonwealth v. Lyons*, 79 A.3d 1053, 1067 (Pa. 2013), *cert. denied*, 134 S.Ct. 1792 (U.S. 2014).

Here, the trial court found the following:

[T]he inaccuracies between the witnesses' testimonies were minor and the biases and inconsistencies were discussed during cross-examination and properly rejected by the Jury.

Mike Warren identified Williams as the individual who had the silver gun, and also admitted that he only saw Williams for a few seconds. During cross-examination Warren rejected the insinuation that his identification testimony was the result of a rumor that Williams was the perpetrator, and again identified Williams as the individual who he saw with the gun.

Darrien Burgess testified that he saw Williams with a revolver and saw him shoot Burgess. During the Defense's case, Jaquise Thomas testified that he received a "kite"[8] purportedly from Darrien that indicated that he would receive a time-served sentence if he testified against Williams. While this "kite," if believed to be from Darrien, certainly exposed a motive to lie, it also refers to and reinforces Darrien's claim that Williams was the one who killed his brother.

Brandon Wright testified that he saw Williams with a gun, and he saw Williams shoot [the victim]. Wright also testified that the shooting was intentional, and that the firearm was a silver revolver. His testimony regarding the description of the firearm as a silver revolver is consistent with the other witnesses' testimony, including the testimony of Tarajai Mills, the only disinterested witness.

In addition, the Commonwealth presented DNA evidence, which linked Williams' DNA to scrapings under [the victim's] fingernails. This DNA evidence, as well as testimony from Tarajai Mills, corroborates the above witnesses' testimony that

---

8  A "kite" is a note that one prisoner sends to another prisoner. N.T., 12/12/2013, at 159.

Williams and [the victim] were [] engaged in a fight before the shooting occurred.

After examining the evidence in this case, we find that Williams' assertion that the inconsistencies in the witnesses' testimony rendered them incredible to have no merit since the inaccuracies claimed are only minor and a witness's credibility is solely for the jury to determine. *Commonwealth v. Davis*, 541 A.2d 315, 317 (Pa. 1988) ("as the phenomenon of lying is within the ordinary capacity of jurors to assess, the question of a witness's credibility is reserved exclusively for the jury"). Furthermore, this Court found the above witnesses to be credible, and was satisfied by their explanation regarding past inconsistent statements.

Trial Court Opinion, 6/2/2014, at 3-4 (record citations omitted).

We agree with the court's well-reasoned analysis. Williams fails to explain in what manner the trial court abused its discretion in denying his weight claim. Rather, his argument consists only of attacks on the credibility of the witnesses. As such, he asks this Court to reweigh the evidence; however, we decline to do so. As our Supreme Court has made clear, we may not reweigh the evidence and substitute our judgment for the trial court's decision. **See Lyons**, **supra**. Therefore, Williams's weight claim fails.

Lastly, Williams challenges the discretionary aspects of his sentence. Specifically, he contends the aggregate sentence is excessive and unreasonable because the court failed to consider the mitigating circumstance that the alleged crime occurred during a fight he did not provoke. Williams's Brief at 34. He states the evidence did not demonstrate that he went to the basketball court with the intent to kill or that he

intended to use the firearm for its traditional purpose. *Id.* Williams reiterates he was just trying to "level the proverbial playing field" between Darrien and Jersey. *Id.* Moreover, he asserts the court punished him for his failure to express remorse when he chose not to speak at sentencing "due to the potential negative impact [his] testimony could have on the instant appeal, as well as unrelated and pending criminal matters." *Id.* at 36.

The standard of review for a claim challenging the discretionary aspects of sentencing is well-established:

> Sentencing is a matter vested in the sound discretion of the judge, and will not be disturbed on appeal absent a manifest abuse of discretion. An abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that then sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

*Commonwealth v. Sheller*, 961 A.2d 187, 190 (Pa. Super. 2008) (citation omitted), *appeal denied*, 980 A.2d 607 (Pa. 2009).

"A challenge to the discretionary aspects of a sentence must be considered a petition for permission to appeal, as the right to pursue such a claim is not absolute." *Commonwealth v. Hoch*, 936 A.2d 515, 518 (Pa. Super. 2007) (citation omitted). To reach the merits of a discretionary issue, this Court must determine:

> (1) whether the appeal is timely; (2) whether Appellant preserved his issue; (3) whether Appellant's brief includes a concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of sentence; and

(4) whether the concise statement raises a substantial question that the sentence is appropriate under the sentencing code.

**Commonwealth v. Edwards**, 71 A.3d 323, 329-330 (Pa. Super. 2013) (citation omitted), *appeal denied*, 81 A.3d 75 (Pa. 2013).

Here, Williams filed a post-sentence motion challenging the discretionary aspects of his sentence, as well as a timely direct appeal. Moreover, his brief includes the requisite statement pursuant to Pa.R.A.P. 2119(f), setting forth the reasons relied upon for allowance of appeal. **See** Williams's Brief at 18-22. Therefore, we may proceed to determine whether Williams has set forth a substantial question that his sentence is inappropriate under the Sentencing Code. **See Commonwealth v. Titus**, 816 A.2d 251, 255 (Pa. Super. 2003).

A substantial question exists when an appellant sets forth "a colorable argument that the sentence imposed is either inconsistent with a specific provision of the Sentencing Code or is contrary to the fundamental norms underlying the sentencing process." **See Ventura**, 975 A.2d at 1133 (citation omitted). As noted above, Williams argues his sentence was excessive because the trial court failed to properly consider a mitigating factor.

> An allegation that the sentencing court failed to consider certain mitigating factors generally does not necessarily raise a substantial question. **Commonwealth v. McNabb,** 819 A.2d 54, 57 (Pa. Super. 2003). *Accord* **Commonwealth v. Wellor,** 731 A.2d 152, 155 (Pa. Super. 1999) (reiterating allegation that sentencing court "failed to consider" or "did not adequately consider" certain factors generally does not raise substantial

question). *Compare* **Commonwealth v. Felmlee**, 828 A.2d 1105, 1107 (Pa. Super. 2003) (*en banc* ) (stating substantial question is raised, however, where appellant alleges sentencing court imposed sentence in aggravated range without adequately considering mitigating circumstances).

**Commonwealth v. Moury**, 992 A.2d 162, 171 (Pa. Super. 2010).

Accordingly, to the extent that Williams argues the court failed to consider the mitigating circumstance that the alleged crime occurred during a fight that he did not provoke, we find this issue does not raise a substantial question. **See id.**

With regard to Williams's assertion that the trial court improperly viewed his silence at sentencing as a lack of remorse and relied solely on that silence in sentencing, this issue does raise a substantial question for appellate review. **See Commonwealth v. Bowen**, 975 A.2d 1120 (Pa. Super. 2009).

Keeping our standard of review in mind, we note that when imposing a sentence, the sentencing court must consider "the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant." 42 Pa.C.S. § 9721(b). Moreover,

> "[w]hen imposing a sentence, a court is required to consider the particular circumstances of the offense and the character of the defendant." **Commonwealth v. Griffin**, 804 A.2d 1, 10 (Pa. Super. 2002), *appeal denied,* 582 Pa. 671, 868 A.2d 1198 (2005), *cert. denied,* 545 U.S. 1148, 125 S.Ct. 2984, 162 L.Ed.2d 902 (2005). "In particular, the court should refer to the defendant's prior criminal record, his age, personal characteristics and his potential for rehabilitation." **Id.** Where

the sentencing court had the benefit of a presentence investigation report ("PSI"), we can assume the sentencing court "was aware of relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors." **Commonwealth v. Devers**, 519 Pa. 88, 101-02, 546 A.2d 12, 18 (1988). *See also* **Commonwealth v. Tirado**, 870 A.2d 362, 368 (Pa. Super. 2005) (stating if sentencing court has benefit of PSI, law expects court was aware of relevant information regarding defendant's character and weighed those considerations along with any mitigating factors). Further, where a sentence is within the standard range of the guidelines, Pennsylvania law views the sentence as appropriate under the Sentencing Code. *See* **Commonwealth v. Cruz-Centeno**, 447 Pa.Super. 98, 668 A.2d 536 (1995), *appeal denied,* 544 Pa. 653, 676 A.2d 1195 (1996) (stating combination of PSI and standard range sentence, absent more, cannot be considered excessive or unreasonable).

**Moury**, 992 A.2d at 171.

Here, the trial court had the benefit of a presentence investigation report, and therefore, we will presume it was "aware of all appropriate sentencing factors and considerations." **Commonwealth v. Downing**, 990 A.2d 788, 794 (Pa. Super. 2010) (citation omitted).[9] Furthermore, the trial court adhered to the standard range of the sentencing guidelines.[10]

_____

[9] Although the pre-sentence investigation report was not included in the certified record, Williams has not challenged the accuracy of the information contained in the document.

[10] With respect Williams's third-degree murder conviction, the deadly weapon enhancement was apparently applied to his sentence; therefore, he faced a standard sentencing range of 114 to 240 months. N.T., 2/27/2014, at 22. The court imposed a sentence at the top of that standard range, 228 to 456 months' imprisonment. With respect to his firearms offense, that crime was graded as third-degree felony. A conviction for third-degree felony carries a seven-year maximum sentence. 18 Pa.C.S. § 1103(3). The

*(Footnote Continued Next Page)*

Appellate review with respect to a sentence within the guidelines is whether the sentence is "clearly unreasonable." 42 Pa.C.S. 9781(c)(2).

The trial court set forth its rationale on the record at the June 27, 2011, sentencing hearing. *See* N.T., 2/27/2014, at 32-35. Specifically, the court considered: (1) Williams was convicted of third-degree murder for using a gun in a fistfight at a local park; (2) Williams's prior juvenile record of violence; (3) Williams's behavior while in prison; (4) Williams's lack of remorse; (5) Williams was threat to society; (6) the pre-sentence investigation; (7) the impact on the victim's family; and (8) the sentencing guidelines*.* With respect to evaluating his silence at sentencing, the court explained its rationale as follows:

> While this Court did note that Williams failed to make a statement indicating his remorse, it was discussed in the context of his rehabilitation needs. Furthermore, it was but one of many factors, including his prior record and behavior while incarcerated, which led this Court to believe that Williams was not amenable to rehabilitation. While this Court is aware that silence at sentencing may not be the sole basis for finding that a defendant lacked remorse, here we found such silence corroborated rather [than] contradicted our finding that Williams lacked amenability to rehabilitation, despite his young age.

Trial Court Opinion, 6/2/2014, at 8 (record citation and footnote omitted).

Based on the testimony presented at the sentencing hearing, the court articulated the gravity as well as the nature and circumstances of the

*(Footnote Continued)* ⎯⎯⎯⎯⎯⎯⎯⎯

court also imposed a consecutive term of three to six years for Williams's firearms possession conviction. Williams does not complain that this sentence was outside the standard range.

offenses in addition to its concern for the protection of the community. Moreover, Williams's silence was not the sole factor in the court's finding that he lacked the potential for rehabilitation. Accordingly, we discern no abuse of discretion. Therefore, Williams's final argument also fails.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/8/2015