388 A.2d 1068

COMMONWEALTH of Pennsylvania, Appellee,

v.

Robert L. HINCHCLIFFE, Appellant.

Supreme Court of Pennsylvania.

Submitted March 6, 1978.

Decided July 14, 1978.

Norman E. Levine, Public Defender, New Castle, for appellant.

Donald E. Williams, Dist. Atty., New Castle, for appellee.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, POMEROY, NIX, MANDERINO and LARSEN, JJ.

## OPINION OF THE COURT

EAGEN, Chief Justice.

This is an appeal from the judgment of sentence imposed upon Robert L. Hinchcliffe following his conviction of murder of the third degree by a jury in Lawrence County.[1]

The prosecution emanated from the untimely death of Floyd Ross whose lifeless body was found wrapped in large plastic garbage bags and encased in a securely tied sleeping bag, by the police in the residence of Hinchcliffe's mother in the City of New Castle.

Ross died from a compound fracture of the skull, laceration of the duramater, laceration of the brain, and a subarachnoid hemorrhage. At trial it was admitted Hinchcliffe struck the blows which caused Ross's fatal injuries. However, according to the evidence, Hinchcliffe and Ross were alone at the time, and Hinchcliffe, testifying in his own defense at trial, claimed he acted in self-defense. Since no other eyewitness was available to contradict this testimony, it is argued the trial evidence is insufficient to sustain a finding of murder of the third degree and the Commonwealth failed in its burden to prove the killing was not in self-defense. Hence, it is argued, Hinchcliffe is entitled to have the judgment arrested.

The Commonwealth has an unshifting burden to prove beyond a reasonable doubt all the elements of the crime charged. See, e. g., *Commonwealth v. Rose*, 457 Pa. 380, 321 A.2d 880 (1974). Furthermore, where, as here, a claim of self-defense is made, the Commonwealth must show beyond a reasonable doubt the killing was not in self-defense. *Commonwealth v. Cropper*, 463 Pa. 529, 345 A.2d 645 (1975). See *Commonwealth v. Lynch*, 477 Pa. 390, 383 A.2d 1263 (1978).

1. Although notice of this appeal was filed on August 27, 1976, the district attorney of Lawrence County has not filed a brief on behalf of the Commonwealth and has ignored several requests to do so. This type of professional and official irresponsibility is emphatically condemned. It is hardly worthy of one charged with such an important public trust.

A summary of the evidence follows:

On December 9 and 10, 1974, Hinchcliffe chauffeured Ross from Ohio to various locations in Pennsylvania so Ross could sell the illicit drugs marijuana and "angel dust." About 5:30 a. m. on December 10, they arrived at the apartment of Mrs. Merle Newton and Dwight Lee Newton [Dwight] who are, respectively, Hinchcliffe's mother and half-brother.

Ross was somewhat incoherent and "high" on drugs when he walked into the apartment. Hinchcliffe, Dwight, and Mrs. Newton sat amicably around the kitchen table and drank coffee while Ross stood nearby conducting himself in a loud, boisterous, and unpredictable manner. He called Mrs. Newton a "whore" and used other foul and insulting language. On another occasion, Ross made verbal threats to Dwight, but no blows were struck. Hinchcliffe intervened on at least three occasions when Ross appeared to be going to extremes. He verbally castigated Ross for his offensive conduct, pushed Ross into a chair, and told him to settle down. On each occasion, Ross became docile, and when Hinchcliffe eventually at 6:30 a. m. suggested that Ross needed sleep and should retire on the large couch in the living room, he did so without protest.

At approximately 1:00 p. m., Hinchcliffe was in the kitchen having coffee with his mother when Ross appeared and immediately apologized to her for his insulting conduct earlier. The effect of the drugs had worn off by that time and she accepted his apology.

At Hinchcliffe's request, Dwight drove Mrs. Newton to the home of a friend at approximately 3:15 p. m. When Dwight returned to the apartment about 5:00 p. m., he found Hinchcliffe in a somewhat nervous state and holding a short length of pipe and a rag in his hand; Ross was lying dead on the floor. Hinchcliffe said to Dwight, "I think I hit him too hard." After some initial hesitation, Dwight went out to buy, at Hinchcliffe's request, a sleeping bag, a stocking cap, and two pairs of gloves, but when he returned he declined to further help Hinchcliffe dispose of Ross's corpse. Shortly thereafter, Dwight called his mother and told her to call the police.

Hinchcliffe's own testimony was the *only* evidence recounting what occurred at the apartment during the more than one and one-half hours that Dwight was absent.

Hinchcliffe stated that after his mother and Dwight left, he told Ross that he was terminating their illicit business relationship and did not want to see him again. Ross became very angry when Hinchcliffe then demanded the return of his $1,000 investment. Ross then pulled a wad of money from his pocket and threw it at him. Hinchcliffe placed the money in his pocket with the money he was then carrying, a little over $100. He assumed Ross was merely repaying the original amount of the investment, but he did not count the money then and did not know the amount was actually $1,400 until he counted it after his arrest. A verbal argument ensued about general matters, and Hinchcliffe left the living room to go to the kitchen. Ross then grabbed him and started to wrestle. During the scuffle, Ross grabbed a short length of pipe and attempted to hit Hinchcliffe, but Hinchcliffe was able to get the pipe out of Ross's hand. At this time the hostilities ceased and Hinchcliffe, according to his testimony, said: "Someone's going to get hurt of [sic] this keeps going on, so let's just—I'm going to go back to Youngstown. Go get your clothes in the living room. Go get your stuff." After Hinchcliffe walked back to the living room, Ross followed him and then grabbed a lamp. They exchanged some comments and, according to his testimony, Hinchcliffe then said, "I told you, let's just call it goodbye and that's it . . . I don't want no trouble." Ross responded by saying he was sorry for apologizing to Hinchcliffe's mother and that "she wasn't nothing but a tramp anyways." Ross then attacked him with the uplifted lamp. Hinchcliffe diverted the lamp by grabbing Ross's arm with his left hand, and, by using his right hand, he struck Ross almost simultaneously on the head with the pipe which he had previously taken from Ross and was still holding in his hand. Ross immediately fell to the floor unconscious and died a short time later. Hinchcliffe admitted planning to surreptitiously dispose of Ross's body and to

hide evidence of the killing. In excuse of this, he said he did not believe the police would accept his version of the occurrence because of his previous crime record. Additionally, he was in violation of his parole because he had left the State of Ohio without permission.

For the following reasons, we do not agree an arrest of judgment is warranted.

18 Pa.C.S.A. § 2501 states:

"A person is guilty of criminal homicide if he intentionally, knowingly, recklessly or negligently causes the death of another human being."

18 Pa.C.S.A. § 2502(c) (Supp.1978–79) states:

"All other kinds of murder shall be murder of the third degree."

This latter definition incorporates the common-law concept of malice as an element of murder of the third degree.

Hinchcliffe by his own testimony admitted killing Ross. From this testimony, a jury could reasonably find that Hinchcliffe was acting knowingly. Malice may be either expressed by the defendant or implied from his words or conduct and the attendant circumstances. *Commonwealth v. Coleman*, 455 Pa. 508, 318 A.2d 716 (1974). It is well established that the fact finder may draw a permissible inference of malice from the intentional use of a deadly weapon on a vital part of the body. *Commonwealth v. Murray*, 460 Pa. 605, 334 A.2d 255 (1975). Furthermore, the fact finder may believe any, all, or none of any witness's testimony, and thus determine the credibility of witnesses. *Commonwealth v. Robson*, 461 Pa. 615, 337 A.2d 573 (1975), *cert. denied*, 423 U.S. 934, 96 S.Ct. 290, 46 L.Ed.2d 265 (1976).

When viewed in this frame of reference, the evidence and all reasonable inferences therefrom, read in the light most favorable to the Commonwealth as verdict-winner, is clearly sufficient to support a verdict in the instant case. The jury could very well have chosen to disbelieve some or all of Hinchcliffe's testimony on the issue of self-defense, and to draw an inference of malice from Hinchcliffe's

intentional use of the pipe on Ross's head. Furthermore, a majority of this Court has ruled malice and self-defense are mutually exclusive concepts. *Commonwealth v. Heatherington*, 477 Pa. 562, 385 A.2d 338 (1978); *Commonwealth v. Cropper*, 463 Pa. 529, 345 A.2d 645 (1975). Since there was evidence from which a jury could at least reasonably infer malice, the Commonwealth has met its burden of proving beyond a reasonable doubt that Hinchcliffe did not act in self-defense. Accordingly, the evidence is sufficient, as a matter of law, to sustain the verdict of guilty of murder of the third degree, and Hinchcliffe's motion in arrest of judgment was properly denied.

■ In the alternative, Hinchcliffe contends that the verdict was against the weight of the evidence, and thus he is entitled to a new trial on that ground. See *Commonwealth v. Meadows*, 471 Pa. 201, 369 A.2d 1266 (1977). Our standard review of the trial court's order denying a new trial is that it will not be disturbed absent an abuse of discretion or an error of law. *Commonwealth v. Zapata*, 447 Pa. 322, 290 A.2d 114 (1972); *Commonwealth v. Ashford*, 227 Pa.Super. 351, 322 A.2d 722 (1974). We cannot conclude the trial court abused its discretion or erred when it denied Hinchcliffe's motion for a new trial on the ground the verdict was contrary to the weight of the evidence. *Commonwealth v. Zapata*, supra.

■ Hinchcliffe finally contends the trial court committed reversible error by admitting into evidence Commonwealth's Exhibit No. 10, an allegedly inflammatory black and white photograph. It depicted a partially opened sleeping bag, with Ross's corpse inside it, and a plastic trash bag covering Ross's feet. The only part of the corpse which was visible was Ross's left hand. There was no blood visible, and Ross's left leg was entirely covered by his pants. The upper part of the body was entirely covered by the sleeping bag.

Assuming arguendo, that Hinchcliffe's objection was preserved for review, it is clearly without merit since the photograph simply cannot be considered inflammatory, and

558

its authenticity and relevancy were established. *Commonwealth v. Liddick*, 471 Pa. 523, 370 A.2d 729 (1977); *Commonwealth v. Petrakovich*, 459 Pa. 511, 521, 329 A.2d 844, 849 (1974) (two-step analysis to determine admissibility of photograph). We note also that the trial court gave appropriate cautionary instructions.

Judgment of sentence affirmed.

MANDERINO, J., concurs in the result.