626 A.2d 1238

**COMMONWEALTH of Pennsylvania, Appellee,**

**v.**

**James LEE, Appellant.**

Superior Court of Pennsylvania.

Submitted April 19, 1993.

Filed June 28, 1993.

Marlene Cooperman, Philadelphia, for appellant.

Kathy L. Echternach, Asst. Dist. Atty., Philadelphia, for Com., appellee.

Before ROWLEY, President Judge and HUDOCK and BROSKY, JJ.

HUDOCK, Judge.

This is an appeal from the judgment of sentence imposed upon Appellant after a bench trial in which he was convicted of third degree murder and possession of an instrument of crime.[1] Timely filed post-verdict motions were denied by the trial court, and Appellant was sentenced to a term of nine and one-half to nineteen years incarceration for murder and to a concurrent term of one to two years for possessing an instrument of crime. No appeal was taken. Thereafter, Appellant filed a petition under the Post Conviction Hearing Act

1. 18 Pa.C.S. §§ 2502(c) and 907(a), respectively.

(PCHA), 42 Pa.C.S. §§ 9541–9551 (repealed).[2]  An amended petition was filed by counsel and the PCHA court granted Appellant's motion to file an appeal to this Court *nunc pro tunc*.  On appeal, the sole issue raised by Appellant is whether there was sufficient evidence of malice to support his conviction of third degree murder.  We affirm.

The facts underlying Appellant's convictions were summarized by the trial court as follows:

> On June 9, 1985, at approximately 10:10 p.m., a Philadelphia Police Officer, while on patrol in the 4700 Block of Frankford Avenue was stopped by [Appellant].  At that time, [Appellant] stated to the police, "Officer, I have a problem. Ijust [sic] killed my girlfriend."  After determining the location of the alleged crime, the Police Officer drove to 4613 Hedge Street, where, in the third floor apartment, the body of Rosa Delgado, a 20–year old Hispanic female was found (N.T. 12/20/85, pp. 5–9).
>
> [Appellant] was immediately placed into custody, handcuffed, and transported to the homicide division of the Police Department at 8th and Race Streets.
>
> The Police also found and took into custody a 16–gauge sawed-off shotgun owned by [Appellant], which was turned over to the firearms unit.
>
> At 10:45 p.m. on June 9, 1985, [Appellant], while in the homicide division, gave a statement to the Police after being advised of and waiving his rights to remain silent or to speak to counsel.
>
> That statement, which was admitted into evidence indicated that [Appellant] and the deceased were having a fight, when [Appellant] "reached over and picked up a shotgun that [he kept] in the house loaded, and it went off."  (N.T. 12/20/85, p. 41).
>
> After completion of the statement, [Appellant] was taken to the hospital at 11:50 p.m., on June 9, 1985, to be treated for a cut on his forehead, approximately ¼ [–] ½ inch and

**2.**  The PCHA was repealed and substantially re-enacted as the Post-Conviction Relief Act, 42 Pa.C.S. §§ 9541–9546, Section 6 of Act 1988, April 13, P.L. 336, No. 47, § 3.

was returned to the homicide division at 12:35 a.m. on June 10, 1985.

Testimony was also presented by Detective John O'Rourke of the Firearms Identification Unit who testified that he received the sawed-off 16–guage [sic] shotgun from the Mobile Crime Detection Unit of the Police Department. It was a Savage Arms Co., Stevens Model, 940D, Single-shot shotgun of 16–gauge without a serial number. The barrel of the shotgun was cut to 9½ inches and buttstock was cut off at about 7⅛ inches behind the triggerguard, giving the shotgun an overall length of approximately 18¼ inches. The gun was test fired and found to be operable.

Further testimony was given by [D]etective O'Rourke that after examining the weapon it was his opinion that the weapon could not be discharged accidentally, that is, without cocking it first, and then pulling the trigger.

Testimony was also given by Dr. Paul J. Hoyer, Assistant Medical Examiner, who conducted an autopsy on the body of Rosa M. Delgado on June 10, 1985. The pertinent findings were of an irregular 2¼ inch by 1½ inch shotgun entrance wound on the left side of the face, two inches to the left of the midline, and four inches below the top of the head entering from the left side of the eye, and going into the brain from front to back.

The doctor further testified that the shotgun was fired at approximately from 5½ inches from the face. It was the doctor's opinion that the cause of death was a shotgun wound to the head and the manner of death was homicide.

Trial Court Opinion at pp. 2–4 (except where noted, citations to notes of testimony omitted).

Appellant testified on his own behalf. As to his version of the events of the night in question, Appellant denied that he and the victim had been arguing and that he threatened to harm the victim. He further asserted that he picked up the gun while cleaning the apartment and held it pointed down to put it on top of the refrigerator, but that he accidentally shot the victim in the head from just inches away. Appellant

admitted that he did not seek medical attention or other help for the victim, and went to see his mother before finally flagging down a police officer.

■ As noted above, Appellant claims that there was insufficient evidence of malice necessary to support a conviction of third degree murder. We disagree. The standard for reviewing a challenge to the sufficiency of the evidence is well-established:

The test for determining the sufficiency of the evidence is whether, viewing the evidence in the light most favorable to the Commonwealth as verdict winner and drawing all proper inferences favorable to the Commonwealth, the jury could reasonably have determined all elements of the crime to have been established beyond a reasonable doubt. *Commonwealth v. Syre*, 507 Pa. 299, 489 A.2d 1340 (1985). This standard is equally applicable to cases where the evidence is circumstantial rather than direct so long as the combination of the evidence links the accused to the crime beyond a reasonable doubt. *Commonwealth v. Sullivan*, 472 Pa. 129, 150, 371 A.2d 468, 478 (1977); *Commonwealth v. Farquharson*, 467 Pa. 50, 354 A.2d 545 (1976); *Commonwealth v. Cox*, 466 Pa. 582, 353 A.2d 844 (1976).

*Commonwealth v. Hardcastle*, 519 Pa. 236, 246, 546 A.2d 1101, 1105 (1988). "There is no requirement that a homicide ... be proven by eyewitness testimony. Circumstantial evidence may be sufficient to prove any element, or all of the elements of the crime." *Id.* at 250, 546 A.2d at 1107–08 (citations omitted).[3] Moreover, "[a]lthough no single bit of evidence

3. Thus, Appellant's claim that the Commonwealth could not prove malice, due to its failure to show evidence that he pointed the gun at the victim, is without merit. When asked by his counsel, Appellant could not recall in which direction the gun was pointed when it allegedly went off. Upon further questioning by the Commonwealth and the trial court, Appellant stated that it was pointed toward the floor. The Commonwealth presented evidence that the victim was shot from a distance of only five and one-half inches from the victim's head and that Appellant admitted that he received a facial wound on his forehead between the eyes consistent when the gun recoiled after it was fired. From this evidence, the fact-finder could reasonably infer that Appellant took aim at the victim.

may conclusively establish guilt, the verdict will be sustained where the totality of the evidence supports the finding of guilt." *Id.*, (*quoting, Commonwealth v. Crowson*, 488 Pa. 537, 543, 412 A.2d 1363, 1365 (1980)). Finally, it is within the province of the fact finder, in this instance the trial court, to believe all, some, or none of the evidence. *Commonwealth v. Gonzales*, 415 Pa.Super. 564, 609 A.2d 1368 (1992).

The definition of malice is well-settled:

Malice consists of a "wickedness of disposition, hardness of heart, cruelty, recklessness of consequences, and a mind regardless of social duty, although a particular person may not be intended to be injured. *Commonwealth v. Drum*, 58 Pa. 9, 15 (1868); *see also Commonwealth v. Young*, 494 Pa. 224, 431 A.2d 230 (1981) ... [Moreover] malice may be found where the defendant consciously disregarded an unjustified and extremely high risk that his actions might cause serious bodily injury. *Commonwealth v. Wanamaker*, 298 Pa.Super. 283, 444 A.2d 1176 (1982).

*Commonwealth v. Cottam*, 420 Pa.Super. 311, 342–343, 616 A.2d 988, 1004 (1992) (citations omitted). Malice may be inferred from "the attending circumstances of the act resulting in the death." *Commonwealth v. Gardner*, 490 Pa. 421, 424, 416 A.2d 1007, 1008 (1980), (*quoting Commonwealth v. Taylor*, 461 Pa. 557, 337 A.2d 545 (1975)). One such circumstance is evidence that the defendant used a deadly weapon upon a vital part of the victim's body; this inference alone is sufficient to establish malice. *See generally, Commonwealth v. Torres*, 396 Pa.Super. 499, 578 A.2d 1323 (1990) and the cases cited therein. Clearly, the Appellant's shooting of the victim in the head, at close range, is a sufficient use of a deadly weapon upon a vital part of the body. *Cf. Commonwealth v. Rodgers*, 500 Pa. 405, 456 A.2d 1352 (1983) (shotgun blast to the head at close range establishes the specific intent to take life).

Appellant takes issue with reliance on the inference of malice from using a deadly weapon upon a vital part of the body by citing this Court's decision in *Commonwealth v. Carbone*, 375 Pa.Super. 261, 544 A.2d 462 (1988) (*en banc*), *reversed on other grounds*, 524 Pa. 551, 574 A.2d 584 (1990).

In *Carbone,* this Court reversed Carbone's first degree murder conviction stating:

> ... it is well settled that the intentional use of a deadly weapon on a vital part of the body raises a permissible inference of malice. [*Commonwealth v. Hinchcliffe,* 479 Pa. 551, 554, 388 A.2d 1068, 1070, *cert. denied,* 439 U.S. 989 [99 S.Ct. 588, 58 L.Ed.2d 663] (1978) ]. This inference has a dual purpose; it allows a jury to infer malice, *Commonwealth v. Caye,* 465 Pa. 98, 348 A.2d 136 (1975); *Commonwealth v. Boyd,* 463 Pa. 343, 344 A.2d 864 (1975), as well as a specific intent to kill, *Commonwealth v. Toledo,* 365 Pa.Super. 224, 529 A.2d 480 (1987); *Commonwealth v. Crowson,* 488 Pa. 537, 412 A.2d 1363 (1979).

The finder of fact is not required to ignore this inference merely because the defendant testifies that he did not intend to take a person's life. [Citations omitted.] Here, the Commonwealth relies on that inference of malice to justify the verdict. The jury was not required to disregard the inference merely because Carbone testified otherwise. However, the Commonwealth's reliance on the inference from the fact of the stabbing is misplaced under the facts of this case.

... In this case, the inference of malice that would normally arise from the use of a deadly weapon upon a vital part of the body of the deceased, absent further explanation, is negated by other evidence presented in this case by the Commonwealth. *Commonwealth v. Caye,* [*supra*].

\*    \*    \*    \*    \*    \*

An inference of malice cannot be accepted in a vacuum. The law infers or presumes from the use of a deadly weapon, in the absence of circumstances of explanation or mitigation, the existence of the mental element—intent, malice, design, premeditation, or whatever term may be used to express it—which is essential to culpable homicide. *See Commonwealth v. Jones,* 355 Pa. 522, 50 A.2d 317 (1947). *See generally* 40 Am.Jur.2d *Homicide* § 265 (1968). It is necessary to look at *all* of the Commonwealth's evidence. In addition, the entire trial record must be evaluat-

ed, and all evidence actually received must be considered. [Citations omitted.]

*Commonwealth v. Carbone,* at 272–274, 544 A.2d at 467, 468 (emphasis in original). Thus, this Court found that the Commonwealth inappropriately relied on the above inference to establish malice. In addition, this Court found that the Commonwealth did not disprove Carbone's claim of self-defense beyond a reasonable doubt. Such a failure of proof, according to this Court, also prevented the establishment of malice.

Allocatur was granted by our Supreme Court and this Court's reversal of Carbone's first degree murder conviction was reversed. *Commonwealth v. Carbone,* 524 Pa. 551, 574 A.2d 584 (1990). Recognizing that the jury need not believe Carbone's claim of self-defense, the high court reversed our decision and reinstated the judgment of sentence on the basis that "[t]he testimonial and physical evidence presented by the Commonwealth negated appellee's version of the incident leading to the victim's death, and gave the jury 'a substantial object on which to rest and fold' the wings of their perplexity. Thus, there was sufficient evidence for the jury to find beyond a reasonable doubt that appellee was not acting in self-defense when she killed the victim." *Id.* at 562, 574 A.2d at 590. Additionally, our Supreme Court stated:

> ... where there is evidence from which a jury can reasonably infer malice, the Commonwealth has met its burden of proving beyond a reasonable doubt that the defendant did not act in self-defense. *Hinchcliffe, supra,* 479 Pa. at 557, 388 A.2d at 1071. It has long been the law of this Commonwealth that "the use of a deadly instrument on a vital part of the body is sufficient to establish the specific intent to kill required for a conviction of first degree murder." *Commonwealth v. Butler,* 446 Pa. 374, 378, 288 A.2d 800[, 802] (1972).

*Id.*

The above summary of the two decisions in *Carbone* clearly demonstrates that Appellant's reliance on this Court's decision in *Carbone* is misplaced. Initially, we note that our Supreme

Court made no reference to the qualifying language as to the inference cited by this Court in *Carbone.* Moreover, even under the language of this Court's decision in *Carbone,* use of the inference is inappropriate only when other evidence *presented by the Commonwealth* negates the inference. In the present case, there was no evidence presented by the Commonwealth which tended to negate the inference. Rather, it was only Appellant's testimony which tended to negate the inference. As noted above, the finder of fact need not disregard the inference merely because Appellant testified to the contrary. *See generally, Commonwealth v. Torres, supra.*

■ This is especially true where evidence by the Commonwealth contradicted Appellant's version of the events leading to the victim's death and indicated a malicious killing. Appellant claimed that use of the inference was inappropriate because he accidentally fired the gun, because his actions after the shooting were consistent with an accidental shooting, and because he had no motive for shooting the victim. Each of these claims was contradicted, in large part, by other evidence presented by the Commonwealth, to-wit: A firearms expert testified that the gun could not be fired without first cocking the hammer and then pulling the trigger; Appellant himself conceded that he did not seek immediate medical attention for the victim following the shooting;[4] and, finally, Appellant, on a prior occasion, stated to the police that he reached for the gun during a fight with the victim. The victim's sister-in-law testified that Appellant and the victim had been arguing, that the victim threatened to leave Appellant, and that Appellant told the sister-in-law to leave or he would hurt both her and the victim. The fatal wound to the victim indicated the gun was fired at close range and Appellant received a facial wound when the gun recoiled. Under these circumstances, we find that the Commonwealth presented sufficient evidence of malice to enable the trial court, acting as fact finder, to conclude that Appellant was guilty of third degree murder.

Judgment of sentence is affirmed.

---

**4.** Malice can be inferred in a homicide prosecution from the failure of the defendant to seek medical care for the victim. *Commonwealth v. Boyd,* 461 Pa. 17, 334 A.2d 610 (1975).