J-S55024-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | |
| KAREEM TODD | |
| Appellant | No. 209 MDA 2017 |

Appeal from the Judgment of Sentence January 13, 2017
in the Court of Common Pleas of York County
Criminal Division at No(s): CP-67-CR-0001288-2015

BEFORE:  DUBOW, J., RANSOM, J., and STRASSBURGER, J.[*]

MEMORANDUM BY RANSOM, J.:                    **FILED OCTOBER 04, 2017**

Appellant, Kareem Todd, appeals from the judgment of sentence of twenty-three and one-half to forty-seven years of incarceration, following a jury trial resulting in his conviction for third degree murder and firearms not to be carried without a license.[1]  We affirm.

On September 13, 2013, Appellant argued about drug territory with Jazz Beady in an alley between Princess and Poplar Streets in the City and County of York, Pennsylvania.  ***See*** Notes of Testimony (N.T.) Trial, 11/14/16 to 11/17/16, at 248-49, 253-55, 576-77.  The argument was observed by Rafael Rivera, Jacques Barnes, and Deloris Randall, also known

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S. §§ 2502(c) and 6106(a)(1).

as "Weezy." *Id.* at 248-49, 253-55, 495, 576. Appellant left the area and called Quentin McGlone, complaining that Mr. Beady had refused to allow him to sell drugs on Princess Street. *Id.* at 255-56; 396-99. The two men returned to Princess Street approximately fifteen minutes later, both armed. *Id.* at 255-56; 395-96. Appellant carried a chrome .357 semi-automatic revolver as he walked towards 653 Princess Street, a gun Ms. Randall had seen him carry two or three weeks earlier. *Id.* at 256-59; 395-96, 576. Mr. Beady and Mr. Barnes, who was armed with a .32 revolver, saw them coming. *Id.* at 498-99.

Appellant pointed the gun at Mr. Beady, Jacques Barnes, Julius Little, and the other men on the porch. *Id.* at 260, 268-69, 400-02, 499. Appellant and Mr. Beady argued again, but Mr. Beady went back into the house and closed the door. *Id.* at 262, 400-02, 499-500. Mr. Barnes and Appellant began to argue, and guns were drawn. *Id.* at 501-02. Mr. Beady briefly came out onto the porch again before running inside. *Id.* at 503. As soon as the door closed, Appellant fired a shot at eye level through it before fleeing with Mr. McGlone. *Id.* at 248-49, 262-63, 403-04, 503-04. After Appellant fired his gun, many people, including Mr. Barnes, began firing their own weapons. *Id.* at 404, 503-05.

Ronielle Kirkland, who lived on the second floor of the residence with her children, was awakened around 3:15 a.m. by the sound of numerous gunshots and went downstairs to investigate. *Id.* at 218-19. When she opened the door and turned on the hall light, she saw Mr. Beady, bleeding

from the head on the floor in the otherwise empty hallway, and ran back up the steps. *Id.* at 219-21. Mr. Little, her boyfriend, joined her. *Id.* Someone attempted to open the door, hitting Mr. Beady in the head, so she locked the door and told them to go around the back. *Id.* at 220-21. Ms. Kirkland's daughter called 911. *Id.* at 227.

At 3:18 a.m., police officers were informed of the shooting and arrived at the scene approximately two minutes later. *Id.* at 108, 111, 129-32. Mr. Little opened the door for Police Officer Andrew Riedy, who observed Mr. Beady lying motionless and face down on the floor. *Id.* at 108-10. Another officer spoke with Mr. Little and Ms. Kirkland upstairs. *Id.* at 111, 129-32, 217, 222-23.

Rolling Mr. Beady over, Officer Riedy found he was bleeding from a wound above his right eyebrow. *Id.* at 111, 131. Officer Riedy pulled Mr. Beady towards the second floor staircase to allow access for emergency services. *Id.* at 111-12. There was a bullet hole at eye level in the outside door of the residence. *Id.* at 112, 131, 149. Other officers arrived to secure the scene and collect evidence. *Id.* at 142-66. Ballistic evidence from guns of other calibers were recovered from the hall, porch, street, and breezeway.[2] *Id.* At 111-12, 147, 170-76. Mr. Beady was taken by

---

[2] At trial, Appellant implied that someone other than himself had committed the homicide. However, he has abandoned this issue on appeal.

ambulance to the hospital, where he later passed away as a result of the gunshot wound to his head. *Id.* at 383, 649.

Following the shooting, Appellant and Mr. McGlone got into a car driven by Ms. Randall. *Id.* at 409, 458. The three drove to a friend's house in York and stayed about fifteen minutes before leaving for Philadelphia. *Id.* at 407-10. On February 6, 2014, Mr. McGlone and Appellant were stopped by police in Philadelphia. *Id.* at 640-41. Mr. McGlone gave the officer his real name, but Appellant claimed his name was "Thomas Thornton." *Id.* Appellant was finally arrested on February 4, 2015. *Id.* at 97, 649. He did not have a license to carry a firearm. *Id.* at 648-49.

At trial, Appellant represented himself with standby counsel Richard Robinson, Esq., present during the proceedings. Following trial, the jury acquitted Appellant of first degree murder[3] and convicted him of the aforementioned charges. The Commonwealth *nolle prossed* the remaining charge of possession of a firearm prohibited.[4] Appellant received an aggregate sentence of twenty-three and one-half to forty-seven years of incarceration. He did not file post sentence motions.

---

[3] 18 Pa.C.S. § 2502(a).

[4] 18 Pa.C.S. § 6105(a)(1).

Appellant timely appealed and filed a court-ordered Pa.R.A.P. 1925(b) statement of errors complained of on appeal. The trial court issued a responsive opinion.

On appeal, Appellant raises the following issues for our review:

I. Whether the evidence was insufficient to establish third degree murder in that the Commonwealth's evidence only established reckless or grossly negligent actions by the Appellant, in that the Appellant allegedly shot through a closed, completely solid wooden door, and the Appellant would not have been able to see the victim when he fired his weapon.

II. Whether the court erred in permitting testimony from Commonwealth witnesses that the Appellant was engaged in drug dealing activity, which led to a dispute over drug dealing territory, which is evidence of prior bad acts which was unfairly prejudicial to the Appellant and outweighed any probative value.

III. Whether the honorable trial court erred in permitting testimony that Appellant provided a false name to a Philadelphia police officer during a traffic stop to establish consciousness of guilt.

IV. Whether the honorable trial court erred in permitting testimony from a Commonwealth witness that she observed the Appellant with a silver revolver, the same weapon allegedly used in the homicide, approximately three weeks prior which was to [*sic*] remote in time to be relevant at trial and was a prior bad act.

Appellant's Brief at 4 (unnecessary capitalization omitted).

First, Appellant challenges the sufficiency of the evidence. ***See*** Appellant's Brief at 15. Appellant contends that the Commonwealth failed to prove the element of malice where Appellant shot through a closed door and would not have been able to see his victim. ***Id.*** at 15-16. Appellant claims

that his actions were reckless or grossly negligent, but that the evidence does not support a charge of third degree murder. *Id.* at 15-17.

We review a challenge to the sufficiency of the evidence as follows.

> In determining whether there was sufficient evidentiary support for a jury's finding [], the reviewing court inquires whether the proofs, considered in the light most favorable to the Commonwealth as a verdict winner, are sufficient to enable a reasonable jury to find every element of the crime beyond a reasonable doubt. The court bears in mind that: the Commonwealth may sustain its burden by means of wholly circumstantial evidence; the entire trial record should be evaluated and all evidence received considered, whether or not the trial court's rulings thereon were correct; and the trier of fact, while passing upon the credibility of witnesses and the weight of the evidence, is free to believe all, part, or none of the evidence.

*Commonwealth v. Diggs*, 949 A.2d 873, 877 (Pa. 2008) (citations omitted).

Third degree murder occurs when a person commits a killing which is neither intentional nor committed during the perpetration of a felony, but contains the requisite malice. *See* 18 Pa.C.S. § 2502(c); *see also Commonwealth v. Kling*, 731 A.2d 145, 147 (Pa. Super. 1999). Malice

> exists where there is a wickedness of disposition, hardness of heart, cruelty, recklessness of consequences, and a mind regardless of social duty, although a particular person may not be intended to be injured. Where malice is based on a reckless disregard of consequences, it is not sufficient to show mere recklessness; rather, it must be shown the defendant consciously disregarded an unjustified and extremely high risk that his actions might cause death or serious bodily injury. A defendant must display a conscious disregard for almost certain death or injury such that it is tantamount to an actual desire to injure or kill; at the very least, the conduct must be such that

- 6 -

one could reasonably anticipate death or serious bodily injury would likely and logically result.

*Kling*, 731 A.2d at 147-48 (internal citations and quotations omitted).

Here, the evidence established that Appellant acted with the requisite malice to sustain his conviction for third degree murder. First, the evidence showed that Mr. Beady was shot in the head and died as a result of his wounds. *See* 18 Pa.C.S. § 2502(c). Multiple witnesses testified to seeing Appellant raise the gun and fire it through the door. *Id.*; *see also* N.T., *supra*. Further, the evidence established that Appellant acted with malice in firing the gun. Although the door was closed, it had been shut only seconds before by Mr. Beady, with whom Appellant had been arguing throughout the day. Indeed, Appellant specifically called Mr. McGlone and asked him if he was armed, because he was having an issue with Mr. Beady. He specifically sought out Mr. Beady to again raise the issue of drug sales. Testimony established that the shot was fired through the door, at approximately eye-height, only seconds after it had been shut. Any reasonable person would have assumed that someone was likely still behind the door. *See*, *e.g.*, *Commonwealth v. Lee*, 626 A.2d 1238, 1242 (Pa. Super. 1993) (finding that gunshot fired at close range following argument, among other circumstances, established sufficient evidence of malice).

Thus, the evidence established that Appellant consciously disregarded an unjustified and extremely high risk that his actions might cause death or serious bodily injury and was sufficient to sustain a conviction for third degree murder. *See Kling*, 731 A.2d at 147-48; *Diggs*, 949 A.2d at 877.

Appellant's second and fourth issues concern claims that the court erred in permitting testimony from Commonwealth witnesses that Appellant had engaged in drug dealing activity and had possessed a silver revolver three weeks prior to the crime. **See** Appellant's Brief at 17, 22. He contends that this is evidence of prior bad acts, that the evidence was more prejudicial than probative and, accordingly, that the trial court erred in admitting this evidence. **Id.** at 17-18.

We examine a trial court's decision concerning the admissibility of evidence for an abuse of discretion. **Commonwealth v. Dengler**, 890 A.2d 372, 379 (Pa. 2005). Regarding the admissibility of prior bad acts,

> [g]enerally, evidence of prior bad acts or unrelated criminal activity is inadmissible to show that a defendant acted in conformity with those past acts or to show criminal propensity. Pa.R.E. 404(b)(1). However, evidence of prior bad acts may be admissible when offered to prove some other relevant fact, such as motive, opportunity, intent, preparation, plan, knowledge, identity, and absence of mistake or accident. Pa.R.E. 404(b)(2). In determining whether evidence of other prior bad acts is admissible, the trial court is obliged to balance the probative value of such evidence against its prejudicial impact.

**Commonwealth v. Sitler**, 144 A.3d 156, 163 (Pa. Super. 2016) (*en banc*) (quoting **Commonwealth v. Sherwood**, 982 A.2d 483, 497 (Pa. 2009).

Prior to reaching the merits of Appellant's issue, we must first determine whether he has preserved it. The Commonwealth filed a motion to admit these prior bad acts on May 20, 2016, according to the docket. Appellant did not file a response to this motion. A hearing was scheduled for July 8, 2016, but the notes of testimony from that hearing do not appear of

record. On July 8, 2016, it appears that the motion was rescheduled for October 27, 2016. An order granting the Commonwealth's motion does not appear of record. Instead, the docket indicates that the motion was granted in part and denied in part but does not indicate which parts. At trial, Appellant did not object to the introduction of the testimony. *See* N.T. at 255, 399-402, 496-98, 574-77.

This Court cannot meaningfully review claims raised on appeal unless we are provided with a full and complete certified record. ***Commonwealth v. O'Black****,* 897 A.2d 1234, 1240 (2006). We have further noted that this requirement is not a mere technicality. ***Commonwealth v. Preston***, 904 A.3d 1, 7 (Pa. Super. 2006). In the absence of an adequate certified record there is no support for an appellant's arguments and thus no basis upon which relief may be granted. ***Id.*** It is well-settled that it is the appellant's responsibility to ensure that the record certified on appeal is complete and contains all materials necessary for this Court to perform its duty. ***See Commonwealth v. Kleinicke***, 895 A.2d 562, 575 (Pa. Super. 2006) (*en banc*). Here, we cannot review Appellant's claim, because it is unclear from the record what parts of the motion in *limine* were granted or denied and, accordingly, we cannot determine whether the court abused its discretion. ***See***, ***e.g.***, ***O'Black***, 897 A.2d at 1240; ***Kleinicke***, 895 A.2d at 575.

Third, Appellant claims that the court erred in admitting testimony that Appellant provided a false name to a Philadelphia police officer during a traffic stop to establish consciousness of guilt.[5] *See* Appellant's Brief at 20. Appellant contends there could be numerous reasons he would have given a false name to the police and that the Commonwealth did not establish that, at the time of the traffic stop, he knew a warrant had been issued for his arrest. *See* Appellant's Brief at 21-22.

As noted above, the admission of evidence is within the sound discretion of the trial court unless there has been an abuse of discretion in admitting said evidence. *See Dengler*, 890 A.2d at 379. "In addition, where evidence exists that a defendant committed a crime, knew he was wanted, and fled or concealed himself, such evidence is admissible to establish consciousness of guilt." *See Commonwealth v. Lukowich*, 875 A.2d 1169, 1173-74 (Pa. Super. 2005) (citing *Commonwealth v. Johnson*, 838 A.2d 663, 681 (Pa. 2003)). Where the evidence at trial fairly raises the inference that a defendant's actions could be construed as consciousness of guilt, they are properly admitted, even where that defendant offers another explanation for his flight or other actions. *See*, *e.g.*, *Lukowich*, 875 A.3d at 1174. Use of an alias has been recognized as evidence of consciousness

---

[5] Appellant filed a motion *in limine* to preclude this evidence on the morning of the first day of trial; the trial court denied his motion from the bench. *See* N.T. at 18-19.

of guilt. ***See Commonwealth v. Robinson***, 721 A.2d 344, 352 (Pa. 1998) (citing ***Commonwealth v. Collins***, 269 A.3d 882 (Pa. 1970)).

Here, the evidence introduced at trial fairly raised the inference that Appellant, by giving a police officer a false name, showed consciousness of guilt. The evidence established that Appellant, after arguing with Mr. Beady, shot at him through a closed door and immediately fled. He then drove from York, Pennsylvania, back to Philadelphia, Pennsylvania. Almost five months later, when stopped by a police officer in Philadelphia, he gave a false name. Thus, Appellant's use of an alias was properly admitted, as the other evidence introduced at trial fairly raised an inference that Appellant's actions could be construed as a consciousness of guilt, and the trial court did not err in denying Appellant's motion. ***See Lukowich***, 875 A.3d at 1174; ***Robinson***, 721 A.2d at 352; ***Dengler***, 890 A.2d at 379.

Judgment of sentence affirmed. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 10/4/2017

- 11 -