J-S38025-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| JEYDIUS ISAIAH ESPADA | : | |
| | : | |
| Appellant | : | No. 639 MDA 2020 |

Appeal from the Judgment of Sentence Entered March 3, 2020
In the Court of Common Pleas of Berks County Criminal Division at
No(s):  CP-06-CR-0003866-2018

BEFORE:   KUNSELMAN, J., McLAUGHLIN, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY McLAUGHLIN, J.:       **FILED: OCTOBER 7, 2020**

Jeydius Isaiah Espada appeals from the judgment of sentence imposed following his conviction for Third-Degree Murder, Aggravated Assault, Firearms Not to Be Carried Without a License, and Possession of an Instrument of Crime.[1] On appeal, Espada claims the verdict for each count was against the weight of the evidence, and that the evidence was insufficient to establish that he possessed a concealed firearm, and possessed a firearm with the intent to employ it criminally, rendering the evidence insufficient to support any of the four guilty verdicts. We affirm on the basis of the trial court's opinion.

_____

[*] Former Justice specially assigned to the Superior Court.

[1] **See** 18 Pa.C.S.A. §§ 2502(c), 2702, 6106, and 907 respectively.

In its opinion, the trial court sets forth the relevant factual and procedural history of this case. **See** Trial Court Opinion, 5/22/20, at 1-5. Espada was convicted of the aforementioned charges after a jury trial during which the jury was entrusted to decide whether Espada or his associate, Savage Guzman ("Savage"), was the shooter. Both Savage and his half-brother Jerel Guzman ("Jerel") testified that Espada shot the victim; however, Espada accused Savage of having shot the victim. The jury found credible the testimony of Savage and Jerel, and acquitted Espada of First-Degree Murder, but found him guilty of all other charges.

Espada raises three questions on appeal.

Whether the verdicts convicting [Espada] of Murder of the Third Degree, Aggravated Assault, Firearms Not to be Carried Without a License, and Possession of a Firearm were against the weight of the evidence?

Whether the evidence was insufficient to establish [Espada] possessed a firearm in a vehicle or concealed on or about his person?

Whether the evidence was insufficient to establish [Espada] possessed a firearm concealed upon his person with intent to employ it criminally?

Espada's Br. at 11-12 (emphasis omitted).

After a thorough review of the record, the parties' briefs, the applicable law, and the well-reasoned opinion of the trial court, we conclude that there is no merit to the issues Espada has raised on appeal. The trial court properly disposes of Espada's weight and sufficiency challenges, and we do not find its rejection of his weight challenge to be an abuse of discretion. **See** Trial Ct.

- 2 -

Op., at 5-13 (concluding that (1) guilty verdicts for Third Degree Murder, Aggravated Assault, Firearms Not to Be Carried Without License, and Possession of an Instrument of Crime were not against weight of evidence; (2) evidence was sufficient to establish that Espada possessed a gun concealed on his person, and used it to shoot his victim in the chest, killing him). Accordingly, we affirm on the basis of the trial court's opinion.

Judgment of sentence affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 10/07/2020

COMMONWEALTH OF
PENNSYLVANIA

          Vs.

JEYDIUS ISAIAH ESPADA

: IN THE COURT OF COMMON PLEAS
: OF BERKS COUNTY, PENNSYLVANIA
: CRIMINAL DIVISION
:
: CP-06-CR-3866-2018
:
:
: ASSIGNED TO: FUDEMAN, J.

---

Memorandum Opinion        May 22, 2020        Madelyn Fudeman, J.

---

## PROCEDURAL HISTORY

Appellant, Jeydius Isaiah Espada, was charged by the Berks County District Attorney with Count 1 - Murder of the First Degree[1], Count 2 - Murder of the Third Degree[2], Count 3- Aggravated Assault[3], Count 4 - Firearms Not to be Carried without License[4], and Count 5 - Possessing Instrument of Crime[5]. Following a four (4) day jury trial, on January 16, 2020, Appellant was found not guilty to Count 1; and guilty to counts 2, 3, 4 and 5.

On March 3, 2020, Appellant was sentenced to 17 years and 3 months to 34 years and 6 months to a state correctional facility. On April 17, 2020, Appellant filed a Notice of Appeal to the Superior Court of Pennsylvania from the order dated March 3, 2020. On April 23, 2020, this court ordered Appellant to file a Concise Statement of Errors Complained of on Appeal within

---

[1] 18 Pa.C.S.A § 2502 §§ A
[2] 18 Pa.C.S.A § 2502 §§ C
[3] 18 Pa.C.S.A § 2702 §§ A1
[4] 18 Pa.C.S.A § 6106 §§ A1
[5] 18 Pa.C.S.A § 907 §§ B

BERKS COUNTY, PA

2020 MAY 22 PM 3:55

CLERK OF COURTS

21 days from the order's entry on the docket, and on April 17, 2020, Appellant timely filed the

Concise Statement of Errors alleging the following:

1. The Commonwealth did not present sufficient evidence to establish that Appellant with malice caused the death of the victim.

2. The Commonwealth did not present sufficient evidence to establish that Appellant's conduct was an attempt to cause serious bodily injury.

3. The Commonwealth did not present sufficient evidence to establish that Appellant ever possessed a semiautomatic handgun regarding Count 4.

4. The Commonwealth did not present sufficient evidence to establish that Appellant ever possessed a semiautomatic handgun regarding Count 5.

5. The weight of the evidence is contrary to the verdict of guilt entered against Appellant for Count 2 – Murder of the Third Degree.

6. The weight of the evidence is contrary to the verdict of guilt entered against Appellant for Count 3 – Aggravated Assault.

7. The weight of the evidence is contrary to the verdict of guilt entered against Appellant for Count 4 – Firearms Not to be Carried Without a License.

8. The weight of the evidence is contrary to the verdict of guilt entered against Appellant for Count 5 – Possessing Instrument of Crime.

## DISCUSSION

### Statement of Facts

At approximately 1 a.m. on May 6, 2018, Appellant and Jose Almodovar ("Savage")

drove Indanesia Wright ("April") to an after-hours party at 326 North Front Street, Reading,

Berks County, Pennsylvania. *Notes of Testimony, Jury Trial, January 13, 2020 through January

16, 2020 ("N.T.") at 56, 137-138.* Appellant and Savage did not remain at the party. *Id.* April

2020 MAY 22 PM 8:55

CLERK OF COURTS

2

was the girlfriend of Damian Hosking ("victim") *N.T. at 54.* The Victim was not present at the party when April arrived, but he arrived later. *N.T. at 57.* Earlier in the day, Victim and April had an argument and ignored each other at the party. *N.T. at 58.* April invited Savage to come back to the party by text because Victim was flirting with other girls. *Id.* April went outside to wait for Savage to arrive. *N.T. at 59.*

Appellant and Savage arrived at the party in a Ford Expedition a few minutes after April's text. *N.T. at 59; 139; Commonwealth Exhibit 200.* The party was held in a private home with an entrance hallway separating the first-floor apartment and the steps leading to the upstairs apartment. *N.T. at 59; 80, 139.* Savage entered the hallway and was patted down by a doorman for weapons. *N.T. at 60.* The doorman found no weapon on Savage. *Id.* Appellant stayed at the front door and was not searched for weapons. *N.T. at 61.*

Victim who was in the entrance hallway yelled to Savage that he could not come into the party. *N.T. at 62; 150.* Savage said OK and began to walk away, and as he did, Victim started a verbal altercation with Savage. *N.T. at 62-63; 150-151.* April testified that she could not hear what was being said because the noise level was very loud with more than 70 people in the small first-floor apartment of a city row home with music playing. *N.T. at 63.* Victim threw either a drink or a bottle near Savage and Appellant as they were departing. *N.T. at 64.* Savage claimed it was a bottle of Corona, and it hit Appellant. *N.T. at 152.* At this point, other girls at the party dragged April into the apartment so she only heard a lot of yelling and screaming and then heard gunshots. *N.T. at 65-66.*

Savage testified that Appellant yelled to Victim to come outside and cocked a handgun back. *N.T. at 151.* Savage exited the property and ran to the right. *N.T. at 153.* Savage said he

3

2020 MAY 22 AM 8: 55

CLERK OF COURTS

turned around and saw Appellant with the gun, saw a muzzle flash, and heard a single gunshot and as he continued to run, he heard another gunshot. *Id.* Savage returned home in the Ford Expedition. *Id.* Both Savage and his half-brother, Jerel Guzman ("Jerel") testified that Savage told Jerel what had just transpired at the party and that Appellant shot Victim. *N.T. at 154; 191.* After the gunshots, April testified that she came out of the apartment and saw Victim laying there and she accompanied him to the hospital where he died. *N.T. at 66-67.*

Jerel testified that he read on Facebook and in a newspaper article that Victim died. *N.T. at 191-192.* After reading about the homicide, Jerel called Crime Alert and informed them that his brother Savage, and Appellant were involved in the incident. *N.T. at 192; 205.* On May 8, 2018, days after the shooting, Jerel spoke to Appellant on the phone to find out where the firearm was located. *N.T. at 193-195.* Jerel testified that he pretended that he was assisting the Appellant and did not want Appellant to know that he was co-operating with police. *N.T. at 195.* Jerel found the firearm with Appellant's assistance, and Appellant, Savage and Jerel met at a property in Hamburg, Berks County, Pennsylvania to break apart the firearm, a .40 caliber semi-automatic hand gun, wipe the parts with bleach and hide them. *N.T. at 193-195.* Later, Jerel asked Appellant to tell him what had happened that night at the party. *N.T. at 197-198.* Appellant told Jerel basically the same story that Savage told him. *Id.;207.* In addition, Appellant told Jarel that he shot the Victim to protect Savage and would do it again if necessary. *Id.: 207.*

On May 9, 2020, Jerel learned that the Appellant was planning to go to Florida, so Jerel called Detective Cedeno of the Reading Police to express his concern that Appellant would leave before police could come to the Hamburg property. *Id.* Reading Police assembled a team and

4

went to the Hamburg property. *N.T. 306-307.* A female allowed police to enter and they found Jerel and Savage in the living room and found Appellant hiding behind a counter in the kitchen. *Id.* Appellant was taken into police custody. *N.T. at 322.*

The primary trial witnesses for the Commonwealth, Savage and Jerel, each had substantial and obvious personal interest in the outcome of the case. Appellant accused Savage of killing Victim. Both Savage and Jerel testified credibly, and other than Appellant's testimony that Savage shot Victim, the defense produced no testimony or evidence to rebut Savage and Jerel. The jury clearly understood the potential impact of each of the witnesses' interest on their testimony and weighed the testimony with all the other evidence.

## Sufficiency of the Evidence – Standard of Review

Appellant alleges eight errors, four of which assert the evidence was insufficient to support the jury's verdict. When reviewing a challenge to the sufficiency of the evidence supporting a defendant's conviction, an appellate court is required to evaluate the record "in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence." *Commonwealth v. Rahman,* 75 A.3d 497, 500 (Pa. Super. 2013) (citation omitted).

The test for determining the sufficiency of the evidence is whether, viewing the evidence in the light most favorable to the Commonwealth as the verdict winner and drawing all proper inferences favorable to the Commonwealth, the jury could have determined that

5

all of the elements of the crime have been established beyond a reasonable doubt. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. The facts and circumstances established by the Commonwealth need not be absolutely incompatible with the defendant's innocence, but the question of any doubt is for the jury unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances. *Commonwealth v. Smith*, 848 A.2d 973, 977 (Pa. Super. 2004) (citation omitted).

An appellate court "may not substitute [its] judgment for that of the fact finder; thus, so long as the evidence adduced, accepted in the light most favorable to the Commonwealth, demonstrates the respective elements of a defendant's crimes beyond a reasonable doubt, the appellant's conviction will be upheld." *Rahman*, 75 A.3d at 501.

## Sufficiency of Evidence – Malice

Appellant's first challenge is that the Commonwealth did not present sufficient evidence to establish that Appellant with malice caused death of victim. Third-degree murder is defined in the Crimes Code as "[all] other kinds of murder" other than first-degree murder or second-degree murder. *18 Pa.C.S. § 2502(c)*. "The elements of third-degree murder, as developed by case law, are a killing done with legal malice, but without the specific intent to kill required in first-degree murder." *Commonwealth v. Hill*, 629 A.2d 949, 951 (Pa. Super. 1993). The Superior Court in *Hill* cites *Commonwealth v. Drum*, 58 Pa. 9 (1868), to define malice: "recklessness of

6

consequences, and a mind regardless of social duty, although a particular person may not be intended to be injured." 629 A.2d at 951. Malice may be inferred from the intentional use of a deadly weapon on a vital part of the body. *Commonwealth v. Hinchcliffe*, 479 Pa. 551, 388 A.2d 1068, *cert. denied*, 439 U.S. 989, 99 S.Ct. 588, 58 L.Ed.2d 663 (1978).

Here, Savage was patted down for weapons by the doorman who decided which individuals would be allowed into the party. *N.T. at 59-60.* During the pat down, April observed that the doorman did not discover any weapons on Savage. *N.T. at 60.* Appellant was never patted down because he never attempted to enter the party, remaining by the outside door. *N.T. at 60-61.* This factual scenario creates at least a strong inference that Appellant was the shooter because Savage did not possess a firearm on his person immediately prior to shots being fired. Savage testified that after he ran out of the building, he saw Appellant holding a firearm, saw the muzzle flash, and heard a shot fired. *N.T. at 153.* As Savage continued to run, he heard another shot fired. *Id.* This comports with the testimony of the pathologist, Dr. Neil Hoffman, who said that Victim received two gunshot wounds. *N.T. at 247-248.* The credibility of Savage's testimony, as well as that of Jerel, and any other witness, is the sole province of the jury. This jury knew the self-interest which may have influenced both Savage, his half-brother Jerel and Appellant. According to Jerel, Appellant admitted that he shot the Victim trying to protect his friend Savage and that he would do it again if ever necessary to protect Savage. *N.T. 197-198.* Clearly, as reflected by their verdict, the jury believed Jarel's testimony that Appellant knew where the handgun was placed after the killing and directed Jarel on where it could be recovered. *N.T. at 194.*

Dr. Hoffman performed the autopsy on Victim and testified that cause of death was "a

7

bilateral hemothorax due to a gunshot to the chest." *N.T. at 248-250.* According to *Hinchcliffe*, malice may be inferred from the intentional use of a deadly weapon on a vital part of the body. 388 A.2d at 1068. A handgun is a deadly weapon and the chest and abdominal region contains many vital organs. Appellant can be reasonably charged with the knowledge that gunshots to the chest and abdomen are likely to cause grave injury or death. Accordingly, the facts adduced at trial are sufficient to support the element of malice and the verdict of guilty to Count 2.

## Sufficiency of Evidence – Serious Bodily Injury

Second, Appellant challenges that the Commonwealth did not present sufficient evidence to establish that Appellant's conduct was an attempt to cause seriously bodily injury. A person may be convicted of aggravated assault graded as a first degree felony if he "attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life...." *18 Pa.C.S. § 2702(a)(1).*

"Serious bodily injury" means "[b]odily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." *18 Pa.C.S. § 2301.*

Here, credible testimony at trial established that Appellant not only attempted to cause, but he did in fact cause serious bodily injury to Victim by shooting Victim twice. *N.T. at 248-250.* The same analysis applied to the previous challenge is applicable to the instant one without any need for further development.

8

Third, Appellant challenges whether the Commonwealth presented sufficient evidence to establish that Appellant possessed a semiautomatic handgun.

> a) Offense defined.--
>
> (1) Except as provided in paragraph (2), any person who carries a
>
> firearm in any vehicle or any person who carries a firearm concealed
>
> on or about his person, except in his place of abode or fixed place of
>
> business, without a valid and lawfully issued license under this
>
> chapter commits a felony of the third degree.
>
> (2) A person who is otherwise eligible to possess a valid license under
>
> this chapter but carries a firearm in any vehicle or any person who
>
> carries a firearm concealed on or about his person, except in his place
>
> of abode or fixed place of business, without a valid and lawfully
>
> issued license and has not committed any other criminal violation
>
> commits a misdemeanor of the first degree. *18 Pa.C.S.A. § 6106 A1.*

Here, Jerel testified that Appellant and Savage co-owned and shared a handgun. *N.T. 203.* Video footage at trial shows Appellant arriving at the party wearing an oversized hoodie-type sweatshirt. *Commonwealth Exhibit 200; 268; N.T. at 323-325.* Detective Cedeno testified:

> Q     Going back then to the camera at 350 North Front Street. I will

9

play one more time and then cut to the next pertinent timestamp. Do you notice anything about the way that the defendant is walking or what he is doing with his hands?

A  He had his hands in his pockets. Left hand in his pocket. At one point his right hand is almost like patting his pockets almost checking if something is in there. *N.T. 323-324.*

The video shows how easily Appellant could have concealed a weapon under his hoodie. Prior to Savage running, he said saw the Appellant cock back a handgun. *N.T. at 151.* Shortly thereafter, Savage saw Appellant holding a handgun, saw a muzzle flash and heard the gunshots. *N.T. at 153.* As discussed *supra,* Savage was patted down for weapons; Appellant was not. *N.T. at 60-61.* According to Jarel, Appellant admitted that he shot the Victim. *N.T. at 197-198,* and Appellant directed Jarel to the location of the discarded handgun. *N.T. at 194.* In addition, Detective Cedeno testified that Appellant did not possess a license to carry a firearm nor was 236 North Front Appellant's home or place of business. *N.T. 313; Commonwealth Exhibit 266.* Neither assertion was challenged by the Defense. The evidence is more than sufficient to support the jury's guilty verdict on this count.

## Sufficiency of Evidence – Possessing Instrument of Crime

Fourth, Appellant challenges that the Commonwealth did not present sufficient evidence that Appellant ever possessed an instrument of crime, namely a semiautomatic handgun.

(b) Possession of weapon.--A person commits a misdemeanor of the

10

first degree if he possesses a firearm or other weapon concealed upon his person with intent to employ it criminally.

*18 Pa.C.S.A § 907.*

The same analysis applied to the previous challenge is applicable to the instant one without further development. Additionally, by cocking the handgun back and yelling at the Victim to come outside, by pulling the trigger and shooting the Victim, there is sufficient evidence to establish that the Appellant had the intent to employ the handgun criminally.

"A person acts intentionally with respect to a material element of an offense when:

(i) if the element involves the nature of his conduct or a result thereof, it is his conscious object to engage in conduct of that nature or to cause such a result..." *18 Pa.C,S.A. §(b)(1)(i).*

The evidence is sufficient to support the jury's verdict of guilty to this Count.

## Weight of the Evidence – Standard of Review

Appellant's last four errors claims that his conviction was against the weight of the evidence. Appellant argues that the weight of the evidence is contrary to the verdict of guilt for Murder of the Third Degree, Aggravated Assault, Firearms Not to be Carried Without a License, and Possessing Instruments of Crime.

11

"A true weight of the evidence challenge concedes that sufficient evidence exists to sustain the verdict but questions which evidence is to be believed." *Commonwealth v. Charlton*, 902 A.2d 554, 561 (Pa. Super. 2006) (citation omitted).

The weight of the evidence is exclusively for the finder of fact who is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses. An appellate court cannot substitute its judgment for that of the finder of fact. Thus, we may only reverse the lower court's verdict if it is so contrary to the evidence as to shock one's sense of justice. Moreover, where the trial court has ruled on the weight claim below, an appellate court's role is not to consider the underlying question of whether the verdict is against the weight of the evidence. Rather, appellate review is limited to whether the trial court palpably abused its discretion in ruling on the weight claim. *Commonwealth v. Champney*, 832 A.2d 403, 408 (Pa. 2003) (citations omitted).

Appellant claims that the verdict was against the weight of the evidence. However, as set forth above in this court's analysis of the sufficiency of the evidence, the verdict was not unsupported by or contrary to the evidence. Rather, the competing evidence was provided by witnesses who all had enormous personal interest in the outcome. When Jerel assisted Detective Cedeno in recovery of the handgun and apprehension of Appellant, Jerel had no open charges. *N.T. 199-201.* However, at the time of trial, Jerel was facing Felony Robbery charges and testified that he was not promised anything in exchange for his testimony. *Id.* The jury evaluated the testimony and evidence, determined the credibility of the witnesses and, when assessing the weight of the evidence, believed the evidence presented by the prosecution and rendered a guilty verdict. There was no testimony or evidence, other than that offered by

12

Appellant, contrary to or inconsistent with the verdict. The jury properly chose what testimony to believe.

BY THE COURT:

MADELYN S. FUDEMAN, J.

13